# CHRISTENSEN ET AL. *v.* HARRIS COUNTY ET AL.

No. 98–1167.   Argued February 23, 2000—Decided May 1, 2000

THOMAS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, KENNEDY, and SOUTER, JJ., joined, and in which SCALIA, J., joined except as to Part III. SOUTER, J., filed a concurring opinion, *post*, p. 589. SCALIA, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 589. STEVENS, J., filed a dissenting opinion, in which GINSBURG and BREYER, JJ., joined, *post*, p. 592. BREYER, J., filed a dissenting opinion, in which GINSBURG, J., joined, *post*, p. 596.

*Michael T. Leibig* argued the cause for petitioners. With him on the briefs were *Richard H. Cobb* and *Murray E. Malakoff.*

*Matthew D. Roberts* argued the cause for the United States as *amicus curiae* urging reversal. On the brief were *Solicitor General Waxman, Deputy Solicitor General Kneedler, Jonathan E. Nuechterlein, Allen H. Feldman,* and *Edward D. Sieger.*

*Michael P. Fleming* argued the cause for respondents. With him on the brief were *Michael A. Stafford, Bruce S. Powers,* and *William John Bux.**

JUSTICE THOMAS delivered the opinion of the Court.

Under the Fair Labor Standards Act of 1938 (FLSA), 52 Stat. 1060, as amended, 29 U. S. C. § 201 *et seq.* (1994 ed. and Supp. III), States and their political subdivisions may compensate their employees for overtime by granting them compensatory time or "comp time," which entitles them to take time off work with full pay. § 207(*o*). If the employees do not use their accumulated compensatory time, the employer is obligated to pay cash compensation under certain circumstances. §§ 207(*o*)(3)–(4). Fearing the fiscal consequences of having to pay for accrued compensatory time, Harris County adopted a policy requiring its employees to schedule time off in order to reduce the amount of accrued compensatory time. Employees of the Harris County Sheriff's Department sued, claiming that the FLSA prohibits such a policy. The Court of Appeals rejected their claim. Finding that nothing in the FLSA or its implementing regulations prohibits an employer from compelling the use of compensatory time, we affirm.

I

A

The FLSA generally provides that hourly employees who work in excess of 40 hours per week must be compensated

---

*Briefs of *amici curiae* urging reversal were filed for the American Federation of Labor and Congress of Industrial Organizations by *Jonathan P. Hiatt, Deborah Greenfield, James B. Coppess,* and *Laurence Gold;* for the International Association of Fire Fighters by *Thomas A. Woodley;* and for the National Association of Police Organizations by *Stephen R. McSpadden.*

*Jeffrey A. Hollingsworth* filed a brief for Spokane Valley Fire Protection District No. 1 as *amicus curiae* urging affirmance.

for the excess hours at a rate not less than 1½ times their regular hourly wage. § 207(a)(1). Although this requirement did not initially apply to public-sector employers, Congress amended the FLSA to subject States and their political subdivisions to its constraints, at first on a limited basis, see Fair Labor Standards Amendments of 1966, Pub. L. 89–601, § 102(b), 80 Stat. 831 (extending the FLSA to certain categories of state and local employees), and then more broadly, see Fair Labor Standards Amendments of 1974, Pub. L. 93–259, §§ 6(a)(1)–(2), 88 Stat. 58–59 (extending the FLSA to all state and local employees, save elected officials and their staffs). States and their political subdivisions, however, did not feel the full force of this latter extension until our decision in *Garcia* v. *San Antonio Metropolitan Transit Authority,* 469 U. S. 528 (1985), which overruled our holding in *National League of Cities* v. *Usery,* 426 U. S. 833 (1976), that the FLSA could not constitutionally restrain traditional governmental functions.

In the months following *Garcia,* Congress acted to mitigate the effects of applying the FLSA to States and their political subdivisions, passing the Fair Labor Standards Amendments of 1985, Pub. L. 99–150, 99 Stat. 787. See generally *Moreau* v. *Klevenhagen,* 508 U. S. 22, 26 (1993). Those amendments permit States and their political subdivisions to compensate employees for overtime by granting them compensatory time at a rate of 1½ hours for every hour worked. See 29 U. S. C. § 207(*o*)(1). To provide this form of compensation, the employer must arrive at an agreement or understanding with employees that compensatory time will be granted instead of cash compensation.[1] § 207(*o*)(2); 29 CFR § 553.23 (1999).

---

[1] Such an agreement or understanding need not be formally reached and memorialized in writing, but instead can be arrived at informally, such as when an employee works overtime knowing that the employer rewards overtime with compensatory time. See 29 CFR § 553.23(c)(1) (1999).

The FLSA expressly regulates some aspects of accrual and preservation of compensatory time. For example, the FLSA provides that an employer must honor an employee's request to use compensatory time within a "reasonable period" of time following the request, so long as the use of the compensatory time would not "unduly disrupt" the employer's operations. § 207(o)(5); 29 CFR § 553.25 (1999). The FLSA also caps the number of compensatory time hours that an employee may accrue. After an employee reaches that maximum, the employer must pay cash compensation for additional overtime hours worked. § 207(o)(3)(A). In addition, the FLSA permits the employer at any time to cancel or "cash out" accrued compensatory time hours by paying the employee cash compensation for unused compensatory time. § 207(o)(3)(B); 29 CFR § 553.26(a) (1999). And the FLSA entitles the employee to cash payment for any accrued compensatory time remaining upon the termination of employment. § 207(o)(4).

## B

Petitioners are 127 deputy sheriffs employed by respondents Harris County, Texas, and its sheriff, Tommy B. Thomas (collectively, Harris County). It is undisputed that each of the petitioners individually agreed to accept compensatory time, in lieu of cash, as compensation for overtime.

As petitioners accumulated compensatory time, Harris County became concerned that it lacked the resources to pay monetary compensation to employees who worked overtime after reaching the statutory cap on compensatory time accrual and to employees who left their jobs with sizable reserves of accrued time. As a result, the county began looking for a way to reduce accumulated compensatory time. It wrote to the United States Department of Labor's Wage and Hour Division, asking "whether the Sheriff may schedule non-exempt employees to use or take compensatory time." Brief for Petitioners 18–19. The Acting Administrator of the Division replied:

"[I]t is our position that a public employer may schedule its nonexempt employees to use their accrued FLSA compensatory time as directed if the prior agreement specifically provides such a provision . . . .

"Absent such an agreement, it is our position that neither the statute nor the regulations permit an employer to require an employee to use accrued compensatory time." Opinion Letter from Dept. of Labor, Wage and Hour Div. (Sept. 14, 1992), 1992 WL 845100 (Opinion Letter).

After receiving the letter, Harris County implemented a policy under which the employees' supervisor sets a maximum number of compensatory hours that may be accumulated. When an employee's stock of hours approaches that maximum, the employee is advised of the maximum and is asked to take steps to reduce accumulated compensatory time. If the employee does not do so voluntarily, a supervisor may order the employee to use his compensatory time at specified times.

Petitioners sued, claiming that the county's policy violates the FLSA because § 207(o)(5)—which requires that an employer reasonably accommodate employee requests to use compensatory time—provides the exclusive means of utilizing accrued time in the absence of an agreement or understanding permitting some other method. The District Court agreed, granting summary judgment for petitioners and entering a declaratory judgment that the county's policy violated the FLSA. *Moreau* v. *Harris County*, 945 F. Supp. 1067 (SD Tex. 1996). The Court of Appeals for the Fifth Circuit reversed, holding that the FLSA did not speak to the issue and thus did not prohibit the county from implementing its compensatory time policy. *Moreau* v. *Harris County*, 158 F. 3d 241 (1998). Judge Dennis concurred in part and dissented in part, concluding that the employer could not compel the employee to use compensatory time unless the employee agreed to such an arrangement in advance. *Id.,*

at 247–251. We granted certiorari because the Courts of Appeals are divided on the issue.[2] 528 U. S. 926 (1999).

## II

Both parties, and the United States as *amicus curiae*, concede that nothing in the FLSA expressly prohibits a State or subdivision thereof from compelling employees to utilize accrued compensatory time. Petitioners and the United States, however, contend that the FLSA implicitly prohibits such a practice in the absence of an agreement or understanding authorizing compelled use.[3] Title 29 U. S. C. § 207(o)(5) provides:

"An employee . . .

"(A) who has accrued compensatory time off . . . , and

"(B) who has requested the use of such compensatory time,

"shall be permitted by the employee's employer to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency."

Petitioners and the United States rely upon the canon *expressio unius est exclusio alterius*, contending that the express grant of control to employees to use compensatory time, subject to the limitation regarding undue disruptions

---

[2] Compare, *e. g., Collins* v. *Lobdell,* 188 F. 3d 1124, 1129–1130 (CA9 1999) (upholding employer's policy compelling compensatory time use), with *Heaton* v. *Moore,* 43 F. 3d 1176, 1180–1181 (CA8 1994) (striking down policy compelling compensatory time use), cert. denied *sub nom. Schriro* v. *Heaton,* 515 U. S. 1104 (1995).

[3] We granted certiorari on the question " '[w]hether a public agency governed by the compensatory time provisions of the Fair Labor Standards Act of 1938, 29 U. S. C. § 207(o), may, absent a preexisting agreement, require its employees to use accrued compensatory time?' " 528 U. S. 926, 927 (1999). As such, we decide this case on the assumption that no agreement or understanding exists between the employer and employees on the issue of compelled use of compensatory time.

of workplace operations, implies that all other methods of spending compensatory time are precluded.[4]

We find this reading unpersuasive. We accept the proposition that "[w]hen a statute limits a thing to be done in a particular mode, it includes a negative of any other mode." *Raleigh & Gaston R. Co.* v. *Reid*, 13 Wall. 269, 270 (1872). But that canon does not resolve this case in petitioners' favor. The "thing to be done" as defined by § 207(*o*)(5) is not the expenditure of compensatory time, as petitioners would have it. Instead, § 207(*o*)(5) is more properly read as a minimal guarantee that an employee will be able to make some use of compensatory time when he requests to use it. As such, the proper *expressio unius* inference is that an employer may not, at least in the absence of an agreement, deny an employee's request to use compensatory time for a reason other than that provided in § 207(*o*)(5). The canon's application simply does not prohibit an employer from telling an employee to take the benefits of compensatory time by scheduling time off work with full pay.

In other words, viewed in the context of the overall statutory scheme, § 207(*o*)(5) is better read not as setting forth the exclusive method by which compensatory time can be used, but as setting up a safeguard to ensure that an em-

---

[4] JUSTICE STEVENS asserts that the parties never make this argument. See *post*, at 593, n. 1 (dissenting opinion). Although the United States and petitioners fail to make their arguments in Latin, we believe a fair reading of the briefs reveals reliance upon the *expressio unius* canon. See Brief for United States as *Amicus Curiae* 16 ("Congress . . . identified only one circumstance in which an employer may exercise some measure of control: when an employee requests the use of compensatory time, the employer must allow such use within a reasonable period of time except where the use would 'unduly disrupt' the employer's operations. 29 U. S. C. 207(*o*)(5). If Congress had intended for employers to exercise unilateral control over the use of compensatory time in other respects as well, it presumably would have so provided"); Reply Brief for Petitioners 4–6 (contending that the FLSA explicitly provides methods for reducing compensatory time and thus other means may not be used).

ployee will receive timely compensation for working overtime. Section 207(*o*)(5) guarantees that, at the very minimum, an employee will get to use his compensatory time (*i. e.*, take time off work with full pay) unless doing so would disrupt the employer's operations. And it is precisely this concern over ensuring that employees can timely "liquidate" compensatory time that the Secretary of Labor identified in her own regulations governing § 207(*o*)(5):

> "Compensatory time cannot be used as a means to avoid statutory overtime compensation. An employee has the right to use compensatory time earned and must not be coerced to accept more compensatory time than an employer can realistically and in good faith expect to be able to grant within a reasonable period of his or her making a request for use of such time." 29 CFR § 553.25(b) (1999).

This reading is confirmed by nearby provisions of the FLSA that reflect a similar concern for ensuring that the employee receive some timely benefit for overtime work. For example, § 207(*o*)(3)(A) provides that workers may not accrue more than 240 or 480 hours of compensatory time, depending upon the nature of the job. See also § 207(*o*)(2)(B) (conditioning the employer's ability to provide compensatory time upon the employee not accruing compensatory time in excess of the § 207(*o*)(3)(A) limits). Section 207(*o*)(3)(A) helps guarantee that employees only accrue amounts of compensatory time that they can reasonably use. After all, an employer does not need § 207(*o*)(3)(A)'s protection; it is free at any time to reduce the number of hours accrued by exchanging them for cash payment, § 207(*o*)(3)(B), or by halting the accrual of compensatory time by paying cash compensation for overtime work, 29 CFR § 553.26(a) (1999). Thus, § 207(*o*)(3)(A), like § 207(*o*)(5), reflects a concern that employees receive some timely benefit in exchange for overtime work. Moreover, on petitioners' view, the compensa-

tory time exception enacted by Congress in the wake of *Garcia* would become a nullity when employees who refuse to use compensatory time reach the statutory maximums on accrual. Petitioners' position would convert § 207(*o*)(3)(A)'s shield into a sword, forcing employers to pay cash compensation instead of providing compensatory time to employees who work overtime.

At bottom, we think the better reading of § 207(*o*)(5) is that it imposes a restriction upon an employer's efforts to *prohibit* the use of compensatory time when employees request to do so; that provision says nothing about restricting an employer's efforts to *require* employees to use compensatory time. Because the statute is silent on this issue and because Harris County's policy is entirely compatible with § 207(*o*)(5), petitioners cannot, as they are required to do by 29 U. S. C. § 216(b), prove that Harris County has violated § 207.

Our interpretation of § 207(*o*)(5)—one that does not prohibit employers from forcing employees to use compensatory time—finds support in two other features of the FLSA. First, employers remain free under the FLSA to decrease the number of hours that employees work. An employer may tell the employee to take off an afternoon, a day, or even an entire week. Cf. *Barrentine* v. *Arkansas-Best Freight System, Inc.*, 450 U. S. 728, 739 (1981) ("[T]he FLSA was designed . . . to ensure that each employee covered by the Act . . . would be protected from the evil of overwork . . ." (internal quotation marks and emphasis omitted)). Second, the FLSA explicitly permits an employer to cash out accumulated compensatory time by paying the employee his regular hourly wage for each hour accrued. § 207(*o*)(3)(B); 29 CFR § 553.27(a) (1999). Thus, under the FLSA an employer is free to require an employee to take time off work, and an employer is also free to use the money it would have paid in wages to cash out accrued compensatory time. The compelled use of compensatory time challenged in this case

merely involves doing both of these steps at once. It would make little sense to interpret § 207(*o*)(5) to make the combination of the two steps unlawful when each independently is lawful.[5]

## III

In an attempt to avoid the conclusion that the FLSA does not prohibit compelled use of compensatory time, petitioners and the United States contend that we should defer to the Department of Labor's opinion letter, which takes the position that an employer may compel the use of compensatory time only if the employee has agreed in advance to such a practice. Specifically, they argue that the agency opinion letter is entitled to deference under our decision in *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984). In *Chevron*, we held that a court must give

---

[5] JUSTICE STEVENS does not dispute this argument. In fact, he expressly endorses half of it. See *post*, at 594, 595 (employer free to cash out compensatory time). Instead, JUSTICE STEVENS claims that we "stumbl[e]" by failing to identify "the relevant general rule" that employees have "a statutory right to compensation for overtime work payable in cash." *Post*, at 592. We fail to do so only because the general rule is not relevant to this case. Both parties to this case agreed that compensatory time would be provided in lieu of cash and thus § 207(a)'s general requirement of cash compensation is supplanted. Petitioners and the United States do assert that the requirement of cash compensation is relevant by analogy. They claim that an employer cannot compel compensatory time use because compensatory time should be treated like employee cash in the bank—that is, under the exclusive control of the employee. But this analogy is wholly inapt under the very terms of the FLSA. The FLSA grants significant control to the employer over accrued compensatory time. For example, the employer is free to buy out compensatory time at any time by providing cash compensation. § 207(*o*)(3)(B); 29 CFR § 553.27(a) (1999). Additionally, an employer is free to deny any request to use compensatory time when such use would unduly disrupt the employer's operations. § 207(*o*)(5)(B); 29 CFR § 553.25(d) (1999). The cash analogy is therefore directly undermined by unambiguous provisions of the statute.

effect to an agency's regulation containing a reasonable interpretation of an ambiguous statute. *Id.*, at 842–844.

Here, however, we confront an interpretation contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking. Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law— do not warrant *Chevron*-style deference. See, *e. g.*, *Reno* v. *Koray*, 515 U. S. 50, 61 (1995) (internal agency guideline, which is not "subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment," entitled only to "some deference" (internal quotation marks omitted)); *EEOC* v. *Arabian American Oil Co.*, 499 U. S. 244, 256–258 (1991) (interpretative guidelines do not receive *Chevron* deference); *Martin* v. *Occupational Safety and Health Review Comm'n*, 499 U. S. 144, 157 (1991) (interpretative rules and enforcement guidelines are "not entitled to the same deference as norms that derive from the exercise of the Secretary's delegated lawmaking powers"). See generally 1 K. Davis & R. Pierce, Administrative Law Treatise § 3.5 (3d ed. 1994). Instead, interpretations contained in formats such as opinion letters are "entitled to respect" under our decision in *Skidmore* v. *Swift & Co.*, 323 U. S. 134, 140 (1944), but only to the extent that those interpretations have the "power to persuade," *ibid.* See *Arabian American Oil Co.*, *supra*, at 256–258. As explained above, we find unpersuasive the agency's interpretation of the statute at issue in this case.

Of course, the framework of deference set forth in *Chevron* does apply to an agency interpretation contained in a regulation. But in this case the Department of Labor's regulation does not address the issue of compelled compensatory time. The regulation provides only that "[t]he agreement or understanding [between the employer and employee] *may* include other provisions governing the preservation, use, or cashing

out of compensatory time so long as these provisions are consistent with [§ 207(o)]." 29 CFR § 553.23(a)(2) (1999) (emphasis added). Nothing in the regulation even arguably requires that an employer's compelled use policy *must* be included in an agreement. The text of the regulation itself indicates that its command is permissive, not mandatory.

Seeking to overcome the regulation's obvious meaning, the United States asserts that the agency's opinion letter interpreting the regulation should be given deference under our decision in *Auer* v. *Robbins*, 519 U. S. 452 (1997). In *Auer*, we held that an agency's interpretation of its own regulation is entitled to deference. *Id.*, at 461. See also *Bowles* v. *Seminole Rock & Sand Co.*, 325 U. S. 410 (1945). But *Auer* deference is warranted only when the language of the regulation is ambiguous. The regulation in this case, however, is not ambiguous—it is plainly permissive. To defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create *de facto* a new regulation. Because the regulation is not ambiguous on the issue of compelled compensatory time, *Auer* deference is unwarranted.

\*     \*     \*

As we have noted, no relevant statutory provision expressly or implicitly prohibits Harris County from pursuing its policy of forcing employees to utilize their compensatory time. In its opinion letter siding with the petitioners, the Department of Labor opined that "it is our position that neither the statute nor the regulations *permit* an employer to require an employee to use accrued compensatory time." Opinion Letter (emphasis added). But this view is exactly backwards. Unless the FLSA *prohibits* respondents from adopting its policy, petitioners cannot show that Harris County has violated the FLSA. And the FLSA contains no such prohibition. The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE SOUTER, concurring.

I join the opinion of the Court on the assumption that it does not foreclose a reading of the Fair Labor Standards Act of 1938 that allows the Secretary of Labor to issue regulations limiting forced use.

JUSTICE SCALIA, concurring in part and concurring in the judgment.

I join the judgment of the Court and all of its opinion except Part III, which declines to give effect to the position of the Department of Labor in this case because its opinion letter is entitled only to so-called "*Skidmore* deference," see *Skidmore* v. *Swift & Co.*, 323 U. S. 134, 140 (1944). *Skidmore* deference to authoritative agency views is an anachronism, dating from an era in which we declined to give agency interpretations (including interpretive regulations, as opposed to "legislative rules") authoritative effect. See *EEOC* v. *Arabian American Oil Co.*, 499 U. S. 244, 259 (1991) (SCALIA, J., concurring in part and concurring in judgment). This former judicial attitude accounts for that provision of the 1946 Administrative Procedure Act which exempted "interpretative rules" (since they would not be authoritative) from the notice-and-comment requirements applicable to rulemaking, see 5 U. S. C. § 553(b)(A).

That era came to an end with our watershed decision in *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 844 (1984), which established the principle that "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency."* While *Chevron* in fact

---

*I do not comprehend JUSTICE BREYER's contention, *post*, at 596–597 (dissenting opinion), that *Skidmore* deference—that special respect one gives to the interpretive views of the expert agency responsible for administering the statute—is not an anachronism because it may apply in "circumstances in which *Chevron*-type deference is inapplicable." *Chevron-*

involved an interpretive regulation, the rationale of the case was not limited to that context: "'The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.'" *Id.*, at 843, quoting *Morton* v. *Ruiz*, 415 U. S. 199, 231 (1974). Quite appropriately, therefore, we have accorded *Chevron* deference not only to agency regulations, but to authoritative agency positions set forth in a variety of other formats. See, *e. g.*, *INS* v. *Aguirre-Aguirre*, 526 U. S. 415, 425 (1999) (adjudication); *NationsBank of N. C., N. A.* v. *Variable Annuity Life Ins. Co.*, 513 U. S. 251, 256–257 (1995) (letter of Comptroller of the Currency); *Pension Benefit Guaranty Corporation* v. *LTV Corp.*, 496 U. S. 633, 647–648 (1990) (decision by Pension Benefit Guaranty Corp. to restore pension benefit plan); *Young* v. *Community Nutrition Institute*, 476 U. S. 974, 978–979 (1986) (Food and

---

type deference can be inapplicable for only three reasons: (1) the statute is unambiguous, so there is no room for administrative interpretation; (2) no interpretation has been made by personnel of the agency responsible for administering the statute; or (3) the interpretation made by such personnel was not authoritative, in the sense that it does not represent the official position of the expert agency. All of these reasons preclude *Skidmore* deference as well. The specific example of the inapplicability of *Chevron* that JUSTICE BREYER posits, viz., "where one has doubt that Congress actually intended to delegate interpretive authority to the agency," *post*, at 597, appears to assume that, after finding a statute to be ambiguous, we must ask in addition, before we can invoke *Chevron* deference, whether Congress intended the ambiguity to be resolved by the administering agency. That is not so. *Chevron* establishes a presumption that ambiguities are to be resolved (within the bounds of reasonable interpretation) by the administering agency. The implausibility of Congress's leaving a highly significant issue unaddressed (and thus "delegating" its resolution to the administering agency) is assuredly one of the factors to be considered *in determining whether there is ambiguity*, see *MCI Telecommunications Corp.* v. *American Telephone & Telegraph Co.*, 512 U. S. 218, 231 (1994), but once ambiguity is established the consequences of *Chevron* attach.

Drug Administration's "longstanding interpretation of the statute," reflected in no-action notice published in the Federal Register).

In my view, therefore, the position that the county's action in this case was unlawful unless permitted by the terms of an agreement with the sheriff's department employees warrants *Chevron* deference if it represents the authoritative view of the Department of Labor. The fact that it appears in a single opinion letter signed by the Acting Administrator of the Wage and Hour Division might not alone persuade me that it occupies that status. But the Solicitor General of the United States, appearing as an *amicus* in this action, has filed a brief, cosigned by the Solicitor of Labor, which represents the position set forth in the opinion letter to be the position of the Secretary of Labor. That alone, even without existence of the opinion letter, would in my view entitle the position to *Chevron* deference. What we said in a case involving an agency's interpretation of its own regulations applies equally, in my view, to an agency's interpretation of its governing statute:

> "Petitioners complain that the Secretary's interpretation comes to us in the form of a legal brief; but that does not, in the circumstances of this case, make it unworthy of deference. The Secretary's position is in no sense a '*post hoc* rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack, *Bowen* v. *Georgetown Univ. Hospital*, 488 U. S. 204, 212 (1988). There is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Auer* v. *Robbins*, 519 U. S. 452, 462 (1997).

I nonetheless join the judgment of the Court because, for the reasons set forth in Part II of its opinion, the Secretary's position does not seem to me a reasonable interpretation of the statute.

JUSTICE STEVENS, with whom JUSTICE GINSBURG and JUSTICE BREYER join, dissenting.

Because the disagreement between the parties concerns the scope of an exception to a general rule, it is appropriate to begin with a correct identification of the relevant general rule. That rule gives all employees protected by the Fair Labor Standards Act of 1938 a statutory right to compensation for overtime work payable in cash, whether they work in the private sector of the economy or the public sector. 29 U. S. C. §§ 206, 207 (1994 ed. and Supp. III). In 1985, Congress enacted an exception to that general rule that permits States and their political subdivisions to use compensatory time instead of cash as compensation for overtime. The exception, however, is not applicable unless the public employer first arrives at an agreement with its employees to substitute that type of compensation for cash. § 207(o); 29 CFR § 553.23 (1999). As I read the statute, the employer has no right to impose compensatory overtime payment upon its employees except in accordance with the terms of the agreement authorizing its use.

The Court stumbles because it treats § 207's limited and conditional exception as though it were the relevant general rule. The Court begins its opinion by correctly asserting that public employers may "compensate their employees for overtime by granting them compensatory time or 'comp time,' which entitles them to take time off work with full pay." *Ante*, at 578. It is not until it reaches the bottom of the second page, however, that the Court acknowledges that what appeared to be the relevant general rule is really an exception from the employees' basic right to be paid in cash. *Ante*, at 579.

In my judgment, the fact that no employer may lawfully make any use of "comp time" without a prior agreement with the affected employees is of critical importance in answering the question whether a particular method of using that form

of noncash compensation may be imposed on those employees without their consent. Because their consent is a condition without which the employer cannot qualify for the exception from the general rule, it seems clear to me that their agreement must encompass the way in which the compensatory time may be used.

In an effort to avoid addressing this basic point, the Court mistakenly characterizes petitioners' central argument as turning upon the canon *expressio unius est exclusio alterius*.[1] According to the Court, petitioners and the United States as *amicus curiae* contend that because employees are granted the power under the Act to use their compensatory time subject solely to the employers' ability to make employees wait a "reasonable time" before using it, "all other methods of spending compensatory time are precluded." *Ante,* at 583. The Court concludes that *expressio unius* does not help petitioners because the "thing to be done" as prescribed by the statute (and because of which all other "things" are excluded) is simply a guarantee that employees will be allowed to make some use of compensatory time upon request, rather than an open-ended promise that employees will be able to choose (subject only to the "reasonable time" limitation) how to spend it. *Ibid.*

This description of the debate misses the primary thrust of petitioners' position. They do not, as the Court implies, contend that employers generally must afford employees essentially unlimited use of accrued comp time under the statute; the point is rather that rules regarding both the avail-

---

[1] It must be noted that neither petitioners' brief nor the brief for the United States as *amicus curiae* actually relies upon this canon. Indeed, the sole mention of it in either brief is in petitioners' statement of the case, in which petitioners refer in a single sentence to an argument made by the Court of Appeals for the Eighth Circuit in *Heaton* v. *Moore,* 43 F. 3d 1176 (1994) (rejecting compelled-use policy absent agreement to that effect), cert. denied *sub nom. Schriro* v. *Heaton,* 515 U. S. 1104 (1995).

ability and the use of comp time must be contained within an *agreement*. The "thing to be done" under the Act is for the parties to come to terms. It is because they have not done so with respect to the use of comp time here that the county may not unilaterally force its expenditure.

The Court is thus likewise mistaken in its insistence that under petitioners' reading, the comp time exception "would become a nullity" because employees could "forc[e] employers to pay cash compensation instead of providing compensatory time" for overtime work. *Ante*, at 585. Quite the contrary, employers can only be "forced" either to abide by the arrangements to which they have agreed, or to comply with the basic statutory requirement that overtime compensation is payable in cash.

Moreover, as the Court points out, *ante*, at 580, 584, even absent an agreement on the way in which comp time may be used, employers may at any time require employees to "cash out" of accumulated comp time, thereby readily avoiding any forced payment of comp time employees may accrue. § 207(*o*)(3)(B); 29 CFR § 553.26(a) (1999). Neither can it be said that Congress somehow assumed that the right to force employees to use accumulated comp time was to be an implied term in all comp time agreements. Congress specifically contemplated that employees might well reach the statutory maximum of accrued comp time, by requiring, in § 207(*o*)(3)(A), that once the statutory maximum is reached, employers must compensate employees in the preferred form—cash—for every hour over the limit.

Finally, it is not without significance in the present case that the Government department responsible for the statute's enforcement shares my understanding of its meaning. Indeed, the Department of Labor made its position clear to the county itself in response to a direct question posed by the county before it decided—agency advice notwithstanding—to implement its forced-use policy nonetheless. The Department of Labor explained:

"[A] public employer may schedule its nonexempt employees to use their accrued FLSA compensatory time as directed if the prior agreement specifically provides such a provision, and the employees have knowingly and voluntarily agreed to such provision . . . .

"Absent such an agreement, it is our position that neither the statute nor the regulations permit an employer to require an employee to use accrued compensatory time." Opinion Letter from Dept. of Labor, Wage and Hour Div. (Sept. 14, 1992), 1992 WL 845100.

The Department, it should be emphasized, does not suggest that forced-use policies are *forbidden* by the statute or regulations. Rather, its judgment is simply that, in accordance with the basic rule governing compensatory time set down by the statutory and regulatory scheme, such policies may be pursued solely according to the parties' *agreement*. Because there is no reason to believe that the Department's opinion was anything but thoroughly considered and consistently observed, it unquestionably merits our respect. See *Skidmore* v. *Swift & Co.*, 323 U. S. 134, 140 (1944).[2]

In the end, I do not understand why it should be any more difficult for the parties to come to an agreement on this term of employment than on the antecedent question whether compensatory time may be used at all. State employers enjoy substantial bargaining power in negotiations with their employees; by regulation, agreements governing the availability and use of compensatory time can be essentially as informal as the parties wish. See 29 CFR § 553.23(c) (1999). And, as we have said, employers retain the ability to "cash out" of accrued leave at any time. That simple step is, after all, the method that the Department of Labor years ago suggested the county should pursue here, and that would

---

[2] I should add that I fully agree with JUSTICE BREYER's comments on *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984). See *post*, at 596–597 (dissenting opinion).

achieve precisely the outcome the county has all along claimed it wants.

I respectfully dissent.

JUSTICE BREYER, with whom JUSTICE GINSBURG joins, dissenting.

JUSTICE SCALIA may well be right that the position of the Department of Labor, set forth in both brief and letter, is an "authoritative" agency view that warrants deference under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984). *Ante*, at 590 (opinion concurring in part and concurring in judgment). But I do not object to the majority's citing *Skidmore* v. *Swift & Co.*, 323 U. S. 134 (1944), instead. And I do disagree with JUSTICE SCALIA's statement that what he calls "*Skidmore* deference" is "an anachronism." *Ante*, at 589.

*Skidmore* made clear that courts may pay particular attention to the views of an expert agency where they represent "specialized experience," 323 U. S., at 139, even if they do not constitute an exercise of delegated lawmaking authority. The Court held that the "rulings, interpretations and opinions of" an agency, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Id.*, at 140; see also *Martin* v. *Occupational Safety and Health Review Comm'n*, 499 U. S. 144, 157 (1991). As Justice Jackson wrote for the Court, those views may possess the "power to persuade," even where they lack the "power to control." *Skidmore, supra*, at 140.

*Chevron* made no relevant change. It simply focused upon an additional, separate legal reason for deferring to certain agency determinations, namely, that Congress had delegated to the agency the legal authority to make those determinations. See *Chevron, supra*, at 843–844. And, to the extent there may be circumstances in which *Chevron*-type

deference is inapplicable—*e. g.,* where one has doubt that Congress actually intended to delegate interpretive authority to the agency (an "ambiguity" that *Chevron* does not presumptively leave to agency resolution)—I believe that *Skidmore* nonetheless retains legal vitality. If statutes are to serve the human purposes that called them into being, courts will have to continue to pay particular attention in appropriate cases to the experience-based views of expert agencies.

I agree with JUSTICE STEVENS that, when "thoroughly considered and consistently observed," an agency's views, particularly in a rather technical case such as this one, "meri[t] our respect." *Ante,* at 595 (dissenting opinion). And, of course, I also agree with JUSTICE STEVENS that, for the reasons he sets forth, *ante,* at 592–594, the Labor Department's position in this matter is eminently reasonable, hence persuasive, whether one views that decision through *Chevron*'s lens, through *Skidmore*'s, or through both.