**In re Jackqueline JACKSON, Debtor.**

**No. 03–43997–JDW.**

United States Bankruptcy Court,
S.D. Georgia,
Savannah Division.

Jan. 21, 2005.

R. Wade Gastin, Savannah, GA, for Debtor.

Sylvia Ford Brown, Savannah, GA, for Trustee.

## MEMORANDUM OPINION

JAMES D. WALKER, JR., Bankruptcy Judge.

This matter comes before the Court on Debtor's Objection to the Chapter 13 Trustee's Fees. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(A). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtor Jackqueline Jackson filed for relief under Chapter 13 of the Bankruptcy Code on December 12, 2003. Her plan was confirmed on July 14, 2004. Debtor filed an objection to the Chapter 13 Trustee's fees on August 12, 2004, contending that the Chapter 13 Trustee charged a percentage fee greater than authorized by statute, resulting in higher plan payments. The Court held a hearing on Debtor's objection on November 9, 2004.

In support of her position, Debtor provided the Court with a copy of a document entitled "Exhibit A," which was produced by the Trustee's office on June 28, 2004. These exhibits are routinely used by the Trustee's office in Chapter 13 cases to estimate how claims will be paid. While the amounts shown on Exhibit A may change during the pendency of the case, it provides insight as to how the Trustee calculates her percentage fee. The Exhibit A provided to the Court shows that the Trustee was to pay out $67,903.62 in secured claims, $7,484.10 in unsecured claims, and $2,939.28 in projected interest, which add up to $78,327.00 to be paid to creditors. In addition, the Trustee estimated her fee at $8,703.00, which brought the overall amount to be paid by Debtor to $87,030.00. The Trustee's estimated fee of

$8,703.00 amounts to 11.11% of the $78,327.00 to be paid to creditors. In contrast, the Trustee's fee is 10% of the total $87,030.00 received. The Trustee stated that the fee shown on Exhibit A is for estimation purposes only. While Exhibit A evidences a fee of 10% of the $87,030.00 amount, the Trustee was really only collecting a fee of 8.5% of all amounts received at the time of Debtor's objection.[1] The Trustee explained that estimating the fee at 10% provides the plan with a cushion. If a debtor pays all amounts estimated in a timely manner, his case will be discharged earlier than projected. If a debtor falls behind in his payments, the cushion provided by the excess trustee fee is used to cover at least some of the shortfall. Regardless, Debtor here concedes that the actual fee being received by the Trustee in her case is less than 10%.

### Conclusions of Law

At issue in this case, is whether the Trustee is charging Debtor a fee in excess of that permitted by statute. The statute provides as follows:

(e)(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11, shall fix—

. . .

(B) a percentage fee not to exceed—

(i) in the case of a debtor who is not a family farmer, ten percent; or

(ii) in the case of a debtor who is a family farmer, the sum of—

(I) not to exceed ten percent of the payments made under the plan of such debtor . . . [.]

. . .

(2) Such individual [trustee] shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee.

28 U.S.C.A. § 586(e)(1) & (2) (West 1993).

The statute authorizes the Attorney General ("AG") to set the Trustee's fee. The parties have stipulated that the AG has properly delegated his authority to the Executive Office for the United States Trustee ("EOUST"). The current Handbook for Standing Trustees, promulgated by EOUST, describes the calculation of the fee as follows:

The percentage fee is applied from all payments received by the standing trustee from the debtor under the plan. Thus, on a $1,000 payment received from a debtor, a standing trustee whose percentage fee is 6% would pay $60 to the standing trustee's expense account and disburse $940 to creditors.

Handbook for Standing Trustees, at 11–1 (December 1, 1998).

 Because of the express delegation in the statute, the Trustee has argued that the Court is obliged to give the EOUST's interpretation of the statute *"Chevron"* deference. The Supreme Court set forth a two-part test for reviewing an agency's interpretation of a statute it is charged with administering. First, the Court must determine whether the question is answered by the plain language of the statute, which binds all parties. Second, if the statute is vague or ambiguous, the Court must determine whether the agency's interpretation is a permissible one. If it is permissible, the Court must defer to that interpretation. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467

---

1. Prior to October 1, 2004, the Chapter 13 standing trustee's percentage fee was fixed at 8.5% of all amounts received. As of October 1, 2004, the fee was fixed at 7.8%.

U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (footnotes omitted).

■ However, *Chevron* deference only applies "when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law...." *United States v. Mead Corp.*, 533 U.S. 218, 226–27, 121 S.Ct. 2164, 2171, 150 L.Ed.2d 292 (2001). To carry the force of law, the agency's interpretation usually must have been the subject of "notice-and-comment rulemaking or formal adjudication." *Id.* at 230, 121 S.Ct. at 2173. *Chevron* deference generally does not apply to interpretations found in "policy statements, agency manuals, and enforcement guidelines...." *Christensen v. Harris County*, 529 U.S. 576, 587 120 S.Ct. 1655, 1662 (2000). In this case, the EOUST's interpretation is set forth in a handbook and was not subject to the sort of formal rulemaking contemplated by *Chevron. See Bolen v. Dengel (In re Dengel)*, 340 F.3d 300, 310 (5th Cir.2003) (declining to apply *Chevron* deference to interpretation of § 586(e) set forth in Handbook for Chapter 12 Standing Trustees).[2] Nevertheless, if the question at issue is unanswered by the plain language of the statute, the EOUST's interpretation may be entitled considerable weight in the Court's analysis. *Mead*, 533 U.S. at 228, 121 S.Ct. at 2172. "The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

■ In any event, the Court's analysis must start with the plain language of the statute. The statute provides for a "percentage fee." It does not specify the percentage to be assessed by the standing Chapter 13 trustee. Rather, it delegates to the AG the authority to set the percentage. In this case, the EOUST set the percentage at 8.5% and later adjusted it to 7.8%. Thus, the Court is left with the question of whether the Trustee charged 8.5% and 7.8% at the relevant times. The Court will use 7.8% for illustrative purposes.

A percentage is merely a ratio. Out of every $100, $7.80 goes to the Trustee. The real question here, then, is how many hundreds of dollars are there? In other words, what is the "pot" from which the Trustee draws her 7.8% fee? Through the policy set forth in the trustee handbook, the EOUST instructed the Trustee that the pot is all payments she receives from Debtor. According to Debtor—and contrary to the EOUST's position—the statute provides that the pot is the total of payments the Trustee disburses to creditors under the plan. In this case, the plain language of the statute supports neither party's position. In the context of a Chapter 12 case, the statute prohibits the AG from setting a percentage that exceeds 10% of "payments *made* under the plan." 28 U.S.C.A. § 586(e)(1)(B)(ii)(I). This might settle the matter in Debtor's favor if this were a Chapter 12 case. However, Congress made no similar provision for Chapter 13 cases. In the Trustee's favor, Congress did state that the fee must be paid out of all "payments *received*" by the Trustee, but this merely directs the Trustee to collect her fee from Debtor rather than some other source. It does not re-

---

**2.** Compare 28 U.S.C. § 586(d), which directs the AG to "prescribe by rule" the qualifica-

tions for standing trustees. Those rules and others are codified at 28 C.R.F. Pt. 58.

quire that the amount of the fee be based on a percentage of payments received.

The statute is silent on the issue of which pot the percentage fee should be drawn from. Therefore, the Court must look to other sources to derive congressional intent. The parties have pointed to the surrounding statutory provisions to fill the gap. But, as explained above, those provisions hardly elucidate the matter; instead, they support conflicting positions. The legislative history also is unhelpful. Section 586 of the Judicial Code (title 28) was promulgated as part of the Bankruptcy Reform Act of 1978. In its original form, the statute provided in relevant part as follows:

(e)(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 13 of title 11, shall fix—

. . .

(B) *a percentage fee, not to exceed ten percent,* based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.

(2) Such individual shall *collect such percentage fee from all payments under plans* in the cases under chapter 13 of title 11 for which such individual serves as standing trustee.

Pub.L. 95–598, Title II, § 224(a), 92 Stat. 2663. Sections 586(e)(1)(B) and (e)(2) were amended to their present form as part of the Bankruptcy Judges, U.S. Trustees, and Family Farmer Bankruptcy Act of 1986, Pub.L. No. 99–554. The most significant change is that under subsection (e)(2), the fee is now to be collected from payments received by the Trustee rather than from payments under the plan.

The Court was unable to locate any relevant legislative history with respect to the amendment. However, when the original version of the statute was passed, the Report of the Committee on the Judiciary, in discussing the administration of individual repayment plan cases, stated as follows: "The percentage fee may not exceed ten percent of the amount paid under plans in cases for which the trustee serves." H.R.Rep. No. 95–595, 95th Congr., 1st Session (1977), U.S.Code Cong. & Admin.News 1978, p. 5963, *reprinted in* C Collier on Bankruptcy App. Pt. 4–1194 (14th ed. rev'd 2005). At first blush, this would seem to support Debtor's position. But, all it really does is set a means for calculating the maximum amount of dollars the Trustee can collect as a fee. If $10,000 is paid under the plan, the Trustee's fee cannot exceed $1,000. However, nothing in the language requires the percentage set by the AG to be a percentage of the amount disbursed to creditors.

In the absence of any direction from the language of the statute or from the legislative history, the Court finds that the policy set forth by the EOUST complies with the statute. The statute directs the AG to set a percentage fee; the AG has done so through the EOUST. Neither the statute nor the legislative history state what pot the percentage should be drawn from. The EOUST has. Its policy of drawing the percentage fee from the total of payments received has been in place for at least five years. It is a simple, easy to apply formula. Furthermore, because the percentage is set based on the costs of Chapter 13 administration, requiring the EOUST to change the method of calculation will not, as a practical matter, result in lower trustee fees paid by Debtor. Instead, if the EOUST has a smaller pot to pick from, it likely will have to set the percentage at a higher rate to collect the same amount of money. In these circum-

stances, the Court is persuaded that the Trustee has not violated § 586 by basing her percentage fee on the payments she receives from Debtor—in compliance with EOUST policy—rather than on distributions made under the plan. As a result, Debtor's objection will be overruled.

An Order in accordance with this Opinion will be entered on this date.