**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANDY SABERI,

　　　　　　　　　*Petitioner,*

　　　　v.

COMMODITY FUTURES TRADING
COMMISSION,

　　　　　　　　　*Respondent.*

No. 05-71590

CFTR No.
CFTR 01-11

OPINION

On Petition for Review of an Order of the
Commodities Futures Trading Commission

Argued and Submitted
March 15, 2007—San Francisco, California

Filed June 4, 2007

Before: Melvin Brunetti, William A. Fletcher, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

**COUNSEL**

Hugh J. Cadden, Esq., Corte Madera, California, for petitioner Andy Saberi.

Nancy R. Page, Esq., and Bella L. Rozenber, Esq., Office of the General Counsel, Commodity Futures Trading Commission, Washington, D.C., for respondent Commodity Futures Trading Commission.

## OPINION

BEA, Circuit Judge:

We are called upon to decide whether a rule of a commodity exchange can form the basis of federal agency action to punish its violation. If so, was the agency finding proper, under the circumstances?

Petitioner Andy Saberi ("Saberi") intentionally violated Chicago Mercantile Exchange ("CME") Rule 8302.E, a speculative position limit rule. The Commodity Futures Trading Commission ("CFTC") determined Saberi's violation of CME Rule 8302.E was a violation of 7 U.S.C. § 6a(e) ("§ 6a(e)") and imposed a cease and desist order, a $110,000 fine, and banned Saberi from trading on all exchanges under CFTC control for 30 days. Contrary to Saberi's contention in his petition for review, CME Rule 443 does not limit the CFTC's ability to impose sanctions for a violation of § 6a(e). Further, contrary to Saberi's contention, the CFTC's imposition of sanctions does not violate due process. We deny the petition.

## I.

The CME is the sole American market for frozen pork belly futures. CME Rule 8302.E restricts the number of open executory futures contracts (or "positions") a speculative trader may possess for a given commodity at a given time. The purpose of this limit is to prevent market manipulation, price instability, and market disorder as futures contracts reach their expiration date. *See* 7 U.S.C. § 6a(a). For frozen pork belly futures contracts, the CME's position limit is a function of both the total deliverable supply[1] of frozen pork bellies and

---

[1] CME Rule 8302.E(4) defines "deliverable supply" as "the number of registered deliverable pork bellies reported in the CME Clearing House Department's weekly report immediately preceding the first Friday of each expiring contract month."

the time left until the expiration of the futures contracts. *See* CME Rule 8302.E. As the expiration of the futures contracts approaches and the deliverable supply decreases, the CME's position limits decrease.

For purposes of CME Rule 8302.E position limits, "the positions of all accounts directly or indirectly owned or controlled by a person or persons . . . and the positions of all accounts in which a person or persons have a proprietary or beneficial interest, *shall be cumulated*." CME Rule 8302.F (emphasis added).

The CME's Market Surveillance Group is responsible for monitoring the CME's speculative position limits. When a trader or firm holds a position at or near an approaching position limit, CME market surveillance staff typically call the exchange member firm carrying the trader's position to notify the trader that his position is at or near the limit and to encourage the exchange member firm to take appropriate action for an orderly liquidation of any excess futures contracts.

## II.

Saberi is an experienced trader. Between 1989 and August 2000, he regularly traded futures contracts in silver, gold, copper, cotton, cocoa, cattle, lean hogs, and frozen pork bellies. Saberi is *not*, however, a member of the CME. At the relevant times, Saberi maintained two commodity trading accounts, one at Dean Witter Reynolds, Inc. ("Dean Witter account") and one at ED&F Man International, Inc. ("ED&F Man account").

On Friday, August 11, 2000, the CME Rule 8302.E position limit for August 2000 frozen pork belly futures contracts was 150 contracts net long or short.[2] The CME Rule 8302.E

---

[2]A futures contract is a standardized contract, traded on a futures exchange, to buy or sell a certain underlying instrument at a certain date

position limit, however, decreased to 50 contracts net long or short at the close of business on Monday, August 14, 2000.

At the close of trading on Friday, Saberi was in compliance, holding a total of 83 August 2000 frozen pork belly contracts: 50 short contracts in his Dean Witter account and 33 short contracts in his ED&F Man account. Saberi held no long contracts. On Monday morning, Saberi increased his position to 93 short contracts by selling 10 additional short contracts through his ED&F Man account. That morning CME's Manager of Agricultural Surveillance, reviewed CME's large-trader position report, noting that as of the close of business on August 11, 2000 Saberi held 83 frozen pork belly positions, which would exceed the 50-contract position limit if not reduced by the close of trading on August 14, 2000. Accordingly, the CME's Manager of Agricultural Surveillance contacted both Dean Witter and ED&F Man, confirmed Saberi's cumulative position, and informed both firms that the CME Rule 8302.E position limit for frozen pork belly futures contracts would decrease at the close of trading to 50 contracts and that Saberi's positions at all firms would be combined when determining compliance with the reduced position limit.

ED&F Man did not contact Saberi on August 14, 2000 to inform him of his impending position limit violation. Dean Witter, however, contacted Saberi and informed him that the

in the future, at a specified price. A futures contract gives the holder *the obligation* to buy or sell, thereby differing from an options contract, which gives the holder *the right, but not the obligation,* to buy or sell. A short position in a futures contract, or *to be short*, means the holder of the position has the obligation to *sell* the underlying asset at a specified price at a later date. Thus, a trader who is short profits if the price of the underlying asset goes down for he can cover his obligation to deliver by purchasing long contracts at descending spot prices. A long position in a futures contract, or *to be long*, means the holder of the position has an obligation to buy the underlying asset at a specified price at a later date. Thus, a trader who is long profits if the price of the underlying asset goes up, for he can buy at his lower contract price and sell at ascending spot prices.

CME Rule 8302.E position limit would decrease to 50 contracts at the close of trading and that Saberi's positions at all firms would be cumulated when determining compliance. As to Dean Witter's phone call, Saberi testified before the ALJ,

> Yes. He called me. He said I have to get out some of my stuff[.] I ask him why? I mean. I don't understand. Why should I do that? I mean, when I'm losing half a million dollars nobody told me to get out, and now I'm trying to make a couple of bucks and they tell me to get out.

Despite this notice, Saberi violated CME Rule 8302.E by making no attempt to liquidate his excess 43 short contracts through purchases of long contracts by the close of trading, electing instead to profit by riding the longs in, allowing the price of long contracts to drop for lack of bids.[3]

## III.

CME's Division of Market Regulation sent Saberi a warning letter stating he had violated CME Rule 8302.E by exceeding the 50-contract position limit in effect at the close

---

[3]On August 15, 2000, Saberi's combined position of 93 short contracts represented approximately 18 percent of the open August pork belly market. By the time Saberi liquidated his excess short pork belly futures contracts on August 15, 2000, their value had increased $54,930 from the close of trading on August 14, 2000 due to a steep decline in the market. The CFTC found "[t]he steep market decline at least partially reflected the trading activity of the two long traders that [CME's Manager of Agricultural Surveillance] had identified as holding positions in excess of 50 contracts when trading opened on August 14, 2000. Both not only liquidated dozens of contracts that day, but also placed unfilled orders to liquidate additional contracts. Due to inadequate liquidity, these traders were unable to reduce their positions to the applicable limit by the close of trading." In short, the CFTC found Saberi withheld buying long contracts to cover his short contracts, thereby affecting market liquidity, and profited from his position limit violation. That is what is called "riding the longs in."

of trading on August 14, 2000. The letter also informed Saberi that the matter had been referred to the CFTC.

The CFTC subsequently filed a one-count administrative complaint against Saberi, charging Saberi with having violated § 6a(e) by violating CME Rule 8302.E. A CFTC Administrative Law Judge ("ALJ") found Saberi had violated CME Rule 8302.E, issued Saberi a cease and desist order to refrain from violating CME Rule 8302.E, ordered Saberi to pay a $110,000 civil penalty, and barred Saberi from trading on the CME for 180 days.

Saberi appealed to the CFTC. The CFTC upheld the ALJ's factual conclusions, the cease and desist order, and the imposition of a $110,000 civil penalty. The CFTC, however, modified the ALJ's trading ban, prohibiting Saberi from trading on any market regulated by the CFTC, not just the CME, for 30 days. This petition for review ensued.

## IV.

We review an agency's interpretation of a statute *de novo*, *Vernazza v. SEC*, 327 F.3d 851, 858 (9th Cir.), *amended by* 335 F.3d 1096 (9th Cir. 2003), rejecting those constructions that are contrary to clearly expressed congressional intent or that frustrate the policy that Congress sought to implement. *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984). Where, however, a statute is ambiguous or silent on a particular point, review of an agency's interpretation is limited to whether the agency's conclusion is based on a permissible construction of the statute. *Id.*

## V.

**[1]** Under 7 U.S.C. § 9, the CFTC conducts administrative proceedings and imposes sanctions for violations of the Commodity Exchange Act. *See* 7 U.S.C. § 9. Here, interpreting

§ 6a(e), the CFTC determined Saberi's undisputed[4] CME Rule 8302.E position limit violation was a violation of § 6a(e) and imposed civil sanctions under § 9.

In relevant part, § 6a(e) states:

> It shall be a violation of this chapter for any person to violate any . . . rule . . . of any contract market . . . fixing limits on the amount of trading which may be done or positions which may be held by any person under contracts of sale of any commodity for future delivery . . . if such bylaw, rule, regulation, or resolution has been approved by the Commission[.][5]

7 U.S.C. § 6a(e). Accordingly, the plain language of § 6a(e) unambiguously imposes liability for violations of contract market position limit rules such as CME Rule 8302.E. *Cf. Hunt*, 591 F.2d at 1218.

## A.

Saberi, however, contends that pursuant to CME Rule 443 a "first occurrence" violation of CME Rule 8302.E is not a "rule violation" and, therefore, his "first occurrence" violation of CME Rule 8302.E was not a violation of § 6a(e).

---

[4]The parties dispute only whether the violation was intentional, a dispute not relevant to liability because, unlike its criminal counterpart, § 6a(e) contains no *mens rea* requirement. *Compare* 7 U.S.C. § 6a, *with* 7 U.S.C. § 13(a)(5), *see also Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211, 1218 (7th Cir. 1979) (concluding "there is nothing in either the statutory language or legislative history which suggests that intent either to affect market prices or specific intent to exceed the speculative limits is a necessary element of a violation" of the predecessor statute to § 6a(e)). Similarly, CME Rule 8302.E does not require knowledge or intent.

[5]The parties stipulated that the CME is a contract market pursuant to 7 U.S.C. § 7 and that the CFTC approved CME Rule 8302.E on May 5, 1998.

In relevant part, CME Rule 443 states:

> For purposes of this rule, positions in excess of any allowed by a valid hedge approval shall be deemed *speculative position limit violations*. All speculative position limit violations shall be handled pursuant to Paragraphs A., B., and C.
>
> * * *
>
> 443.A. First Occurrence
> The first occurrence of a speculative position limit violation will result in a warning letter to be issued by the Division of Market Regulation. In the case of a customer trading at more than one clearing member, the customer, in addition to the commodity representatives and clearing members, will be issued a warning letter. *A rule violation will not be recorded for the first occurrence of a speculative position limit violation*; however, a record of the incident will be maintained.
>
> 443.B.   First Violation Following a Warning Letter
> The first speculative position limit violation within 12 months of the receipt of a warning letter *shall constitute a rule violation* which shall subject the violator to a cease and desist order to be issued
> . . . .
>
> * * *
>
> *If a customer*, trading at more than one clearing member, *exceeds the speculative position limits after having received a warning letter for a previous violation of this rule, the customer will be issued a second warning letter*, with copies sent to the appropriate clearing members, stating that third vio-

lation will result in a hearing to deny access to the market.

CME Rule 443 (emphasis added).

Focusing on the emphasized language in the preceding quote, Saberi contends his CME Rule 8302.E violation is not a violation of § 6a(e) because "first occurrence" violations are not recorded, *see* CME Rule 443.A, and CME 8302.E violations constitute "rule violations" only when they occur within 12 months of receiving a "first occurrence" position limit violation warning letter, *see* CME Rule 443.B.

**[2]** The plain language of § 6a(e), CME Rule 443, and CME Rule 8302.E does not, however, support Saberi's contention. Section 6a(e) does not condition liability thereunder on whether the contract market involved, here the CME, deems a position limit violation to be a "rule violation" for purposes of CME disciplinary action. *See* 7 U.S.C. § 6a.[6]

**[3]** CME Rule 443, which governs the CME's internal handling of position limit violations, does not state "first occurrence" violations are not rule violations for the purposes of § 6a(e) liability. Rather, CME Rule 443.A states, "[a position limit] rule violation will *not be recorded* for the first occurrence of a speculative position limit violation[.]" Similarly, CME Rule 443.B states CME 8302.E violations "within 12 months of the receipt of a warning letter shall constitute a rule violation *which shall subject the violator to a cease and desist order . . . .*" (emphasis added). Accordingly, contrary to Saberi's contention, CME Rule 443.B does not state CME Rule 8302.E position limit violations are *only* "rules violations" when they occur within 12 months of a warning letter. Rather, CME Rule 443.B indicates subsequent violations

---

[6]Accordingly, the CFTC's interpretation of § 6a(e), *i.e.*, that § 6a(e) is violated by a violation of CME Rule § 8302.E, is not contrary to clear congressional intent.

expose the violator to a cease and desist order. CME Rule 443 does not guarantee that there will be no punishment for a "first occurrence" of CME Rule 8302.E.

**[4]** The text of CME Rule 8302.E also does not support Saberi's contention. First, it contains express language of prohibition: "No person shall own or control more than" the applicable number of contracts. Second, nothing in CME Rule 8302.E states that a "first occurrence" position limit violation is not a rule violation or that it should not be considered such for purposes of § 6a(e) liability.

**[5]** Moreover, even if the plain language of § 6a(e) is not clear or CME Rule 443 creates some ambiguity regarding the scope of § 6a(e) liability, the CFTC decided Saberi's case in a published disposition. Thus, the CFTC's interpretation of § 6a(e) liability as including all violations of CME Rule 8302.E, regardless of how that violation is treated under CME Rule 443, is entitled to deference. *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (interpretations contained in formal adjudications warrant *Chevron* deference).

**[6]** Accordingly, we reject Saberi's reading of § 6a(e), CME Rule 8302.E, and CME Rule 443.

**B.**

Saberi also advances two theories as to how the CFTC's interpretation of CME Rule 8302.E, CME Rule 443, and § 6a(e) violates due process. Neither theory has merit.

Saberi contends the CFTC's interpretation violates due process by creating an arbitrary distinction between members of the CME and non-members with respect to the adjudication of CME Rule 8302.E violations. Specifically, Saberi contends "first occurrence" violations by CME members result only in a warning letter, whereas "first occurrence" violations by non-

members result in a warning letter *and* referral to the CFTC for additional sanctions.

The record does not support this contention. The testimony of CME's Managing Director of Regulatory Affairs establishes only that no CME member has been referred to the CFTC for a violation of CME Rule 8302.E *since* 1998. More importantly, if a distinction between CME members and non-members exists, the record establishes a rational basis for such a distinction. As CME's Managing Director of Regulatory Affairs testified:

> A. [Saberi's case] was referred to the Commodity Futures Trading Commission due to CME's limited jurisdiction over non-member non-registrant entities.
>
> Q. When you say the "CME's limited jurisdiction," what do you mean by that?
>
> A. Generally speaking, rules of the CME apply to members, clearing members, their employees, and certain other agents and do not apply to the general public. As a result, a number of circumstances arise where we will consider referring matters involving people outside of our jurisdiction to the CFTC.

Relying on *Upton v. SEC*, 75 F.3d 92 (2d Cir. 1996), Saberi also contends the CFTC's imposition of sanctions violates due process because CME Rule 8302.E, CME Rule 443, and § 6a(e) do not provide fair notice as to what conduct is prohibited. *Upton*, however, does not stand for this proposition.

In *Upton*, the Chief Financial Officer of a now defunct brokerage firm petitioned for review from the Securities and Exchange Commission's ("SEC") issuance of an order censuring him for inadequate supervision of a subordinate who circumvented a SEC reserve computation rule. Upton's subordinate regularly paid down unsecured loans with secured

loans immediately before the SEC's weekly reserve computation and then, following computation, paid down the newly acquired secured loans with unsecured loans. Doing so freed up between $20 and $40 million in funds by circumventing the SEC's reserve requirement. "It [was] undisputed that [Upton's firm] *complied with the literal terms* of the [reserve computation rule] at all times. In fact, [the firm's] paydown practice was standard procedure at several other brokerage firms . . . ." *Upton*, 75 F.3d at 94 (emphasis added). Nevertheless, the SEC censured Upton because the practice violated the spirit of the rule.

The Second Circuit reversed:

> Due process requires that laws give the person of ordinary intelligence a *reasonable opportunity to know what is prohibited*. Although the Commission's construction of its own regulations is entitled to "substantial deference," we cannot defer to the Commission's interpretation of its rules if doing so would penalize an individual who has not received fair notice of a regulatory violation.
>
> * * *
>
> Because there was substantial uncertainty in the [SEC's] interpretation of the [reserve computation rule], Upton was not on reasonable notice that [the practice] might violate the Rule.

*Upton*, 75 F.3d at 98 (internal citations and quotation marks omitted).

**[7]** Unlike the conduct in *Upton,* which complied with the literal terms of the rule at issue, Saberi's conduct violated the literal terms of CME Rule 8302.E, which states "no person shall own or control more than" the applicable number of contracts. This language—"no person shall own or control more

than"—satisfies due process because it gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited. Likewise, § 6a(e) contains language giving a person of ordinary intelligence a reasonable opportunity to know what is prohibited: "It shall be a violation of this chapter for any person to violate any . . . rule . . . of any contract market . . . fixing limits on the amount of trading which may be done or positions which may be held by any person under contracts of sale of any commodity for future delivery[.]" 7 U.S.C. § 6a(e).

[8] Accordingly, we reject Saberi's due process claims.

## C.

[9] Saberi's contention that the CFTC imposed excessive sanctions also lacks merit. An agency's imposition of sanctions is reviewed for an abuse of discretion. *See Ponce v. SEC*, 345 F.3d 722, 728-29 (9th Cir. 2003). Thus, a penalty imposed should not be overturned unless it is unwarranted in law or unjustified in fact. *See Balice v. Dep't of Agriculture*, 203 F.3d 684, 689 (9th Cir. 2000). Here, Saberi's intentional violation of CME Rule 8302.E supports the CFTC's imposition of sanctions. Given that Saberi made no effort to liquidate his excess position before the close of trading, even after being notified to do so by his broker, the CFTC's finding that Saberi intentionally violated the CME Rule 8302.E is not clearly erroneous. The $110,000 fine imposed by the CFTC is roughly twice the amount Saberi profited by his intentional violation of CME Rule 8302.E. We do not find such a fine to be excessive or an abuse of discretion.

**DENIED.**