THE COUNTY OF ST. CLAIR *et al.*, Plaintiffs-Appellants, v. ILLINOIS FRATERNAL ORDER OF POLICE LABOR COUNCIL, Defendant-Appellee.

Fifth District    No. 5—01—0990

Opinion filed May 2, 2003.

Alvin C. Paulson and Garrett P. Hoerner, both of Becker, Paulson & Hoerner, P.C., of Belleville, for appellants.

John R. Roche, Jr., of Illinois Fraternal Order of Police Labor Council, of Western Springs, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

The plaintiffs, St. Clair County and the St. Clair County sheriff, appeal an order of the circuit court of St. Clair County denying the plaintiffs' petition to vacate an arbitration award. The arbitration award, entered as a part of a collective bargaining process under the Illinois Public Labor Relations Act (Act) (5 ILCS 315/1 *et seq.* (West 2000)), states that peace officers employed by the plaintiffs have the right to determine whether overtime is paid in cash or in compensatory time. On appeal, the plaintiffs raise the following issues: (1) whether the arbitration award should be vacated as lacking authority and violating public policy because the issue involves inherent managerial policy not subject to mandatory arbitration and (2) whether the arbitration award was sufficiently based upon the requisite factors. We affirm.

## FACTS

The defendant, the Illinois Fraternal Order of Police Labor Council, and the plaintiffs are parties to a collective bargaining agreement in which the defendant represents all sworn police officers below the rank of sergeant employed by the plaintiffs. During negotiations of the terms of a collective bargaining agreement, the parties were unable to resolve several issues. The parties then submitted their dispute to interest arbitration in accordance with section 14 of the Act (5 ILCS 315/14 (West 2000)).

Several issues were presented to the arbitrator, including whether the plaintiffs or the officers would determine whether overtime is paid in cash or in compensatory time. The plaintiffs contend that they objected to this issue being presented to the arbitrator, by stating that

the undisputed past practice had been that the plaintiffs retained the authority to designate whether compensatory time or cash payments would be given and that the matter was, therefore, a managerial issue subject only to permissive negotiation. The matter proceeded to arbitration on May 22, 2000, and on September 20, 2000, the arbitrator issued an award ruling that the officers would have the right to determine whether overtime is paid in cash or in compensatory time.

On December 18, 2000, in the circuit court of St. Clair County, the plaintiffs filed a petition to vacate the arbitration award. On October 12, 2001, the circuit court entered a judgment denying the plaintiffs' petition to vacate. The defendant filed a motion to reconsider on the issue of interest, which the court subsequently granted. The plaintiffs appeal.

## ANALYSIS

■ As an initial matter, we address the defendant's argument that the circuit court did not have authority to review the issue of whether this was a mandatory or permissive subject of bargaining. The defendant contends that the Act divests the circuit court of authority or jurisdiction to consider whether the overtime-compensation issue was a matter of permissive or mandatory bargaining. See 5 ILCS 315/11(e) (West 2000) (the judicial review of a final order of the Illinois Labor Relations Board "shall be afforded directly in the appellate court for the district in which the aggrieved party resides or transacts business"); see *Board of Education, Benton Consolidated School District No. 47, Franklin County v. Benton Federation of Teachers, Local No. 1956*, 165 Ill. App. 3d 514, 521, 518 N.E.2d 1257, 1262 (1988). The defendant contends that the Illinois Administrative Code establishes a procedure for obtaining declaratory rulings on such issues from the Illinois Labor Relations Board (Board). 80 Ill. Adm. Code § 1200.140(b) (2000). Although in argument before the circuit court the defendant did point out the procedure for a declaratory judgment, there is no indication that the defendant moved to dismiss the plaintiffs' petition, and the circuit court did not state a finding on the matter. At oral argument on appeal, the plaintiffs' counsel argued that the avenue for a declaratory ruling by the Board was merely optional and that, at the most, a ruling in the defendant's favor on this topic would result in a remand of the case to the Board. Even if we were to accept the defendant's argument that the circuit court had no jurisdiction to review the arbitrator's decision, this court would still have jurisdiction. The defendant's argument is that the circuit court would have had no authority to vacate the award and that the proper procedure would have been the exhaustion of remedies before the Board prior to *direct* review by the appellate court.

The acceptance of the defendant's position would allow us to dismiss the plaintiffs' appeal for the failure to follow the proper procedure, but it does not deprive this court of its ability to review orders of an administrative agency. See 155 Ill. 2d R. 335; 5 ILCS 315/11(e) (West 2000). Because the plaintiffs did not pursue any other review by the administrative agency, they may not now complain that the decision of the arbitrator was not final. The arbitrator's decision and the circuit court order affirming the arbitrator are substantially similar in their result. Because we rule for the defendant, we need not address whether the trial court would have had the power to vacate the arbitration award.

■ The issue of whether the plaintiffs or their peace officers have the right to determine whether overtime is paid in cash or in compensatory time is subject to mandatory arbitration. The plaintiffs contend that this subject is a matter of inherent managerial policy. The Act defines management rights:

"§ 4. Management Rights. Employers shall not be required to bargain over matters of inherent managerial policy, which shall include such areas of discretion or policy as the functions of the employer, standards of services, its overall budget, the organizational structure and selection of new employees, examination techniques[,] and direction of employees. Employers, however, shall be required to bargain collectively with regard to policy matters directly affecting wages, hours[,] and terms and conditions of employment[,] as well as the impact thereon[,] upon request by employee representatives." 5 ILCS 315/4 (West 2000).

■ The Illinois Supreme Court established a three-prong test for determining whether an issue is a mandatory subject of collective bargaining, in the case of *Central City Education Ass'n v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496, 523, 599 N.E.2d 892, 905 (1992). The first prong of the test calls for a determination of whether the issue is one of wages, hours, and terms and conditions of employment. *Central City Education Ass'n*, 149 Ill. 2d at 523, 599 N.E.2d at 905. If the issue passes the first prong of the test, the second prong is to consider whether the issue also is one of inherent managerial authority. *Central City Education Ass'n*, 149 Ill. 2d at 523, 599 N.E.2d at 905. If the answer to the second question is no, the analysis ends because the matter would be subject to mandatory bargaining. If the answers to the questions in the first two prongs are yes, this creates a hybrid situation that calls for the weighing of the benefits that bargaining will have on the decision-making process against the burdens that bargaining would impose upon the employer's authority. *Central City Education Ass'n*, 149 Ill. 2d at 523, 599 N.E.2d at 905;

see *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 206, 692 N.E.2d 295, 302 (1998).

The question of who determines whether overtime is paid in cash or in compensatory time fits neatly in the category of policy matters that directly affect "wages, hours[,] and terms and conditions of employment[,] as well as the impact thereon." 5 ILCS 315/4 (West 2000). The form of overtime taken affects the hours an employee works, as well as the amount the employee takes home. On the other hand, this matter is not clearly analogous to other matters of managerial discretion such as standards of service, the overall budget, the organizational structure, the selection of new employees, examination techniques, or the direction of employees. Nonetheless, the trial court found that the arbitrator had considered this to be a hybrid situation and that the arbitrator had made the necessary balancing of competing factors set forth in *Central City Education Ass'n*. In the section of the arbitrator's award pointed to by the trial court, the arbitrator discusses the merits of the parties' claims. See 5 ILCS 315/14(h) (West 2000). A review of this section of the award, however, also supports the conclusion that the benefits that bargaining on the issue will have on the decision-making process outweigh any burdens that would be placed upon the employer's authority. *Cf. Central City Education Ass'n*, 149 Ill. 2d at 523, 599 N.E.2d at 905. The arbitrator pointed out that the plaintiffs had made no argument other than referring to past practice. The arbitrator stated that the plaintiffs had pointed to no economic or administrative constraint or consequences that would be harmful to the plaintiffs and that the plaintiffs are the only one of five comparable communities to demand unfettered discretion on this matter. A review of the arbitrator's decision and the trial court's order reveals that both were cognizant of the concerns underlying the tests set forth in *Central City Education Ass'n*.

The plaintiffs contend that the arbitrator's award violates public policy. The plaintiffs point to *Christensen v. Harris County*, 529 U.S. 576, 146 L. Ed. 2d 621, 120 S. Ct. 1655 (2000). *Christensen* involved the application of the Fair Labor Standards Act of 1938 (Standards Act) (29 U.S.C. § 201 *et seq.* (1994)). The plaintiffs quote *Christensen*: "The canon's application simply does not prohibit an employer from telling an employee to take the benefits of compensatory time by scheduling time off work with full pay." *Christensen*, 529 U.S. at 583, 146 L. Ed. 2d at 629, 120 S. Ct. at 1661.

*Christensen* involved a policy instituted by a county and its sheriff to regulate the accumulation of extensive compensatory hours. Under the policy, the employee's supervisor could set a maximum number of compensatory hours that could be accumulated and advise the

employee to take steps to reduce the accumulated compensatory time if the limit was reached. The policy allowed a supervisor to order the employee to use his compensatory time at specified times if the employee did not comply with the request to reduce accumulated time.

In *Christensen*, each of the petitioning deputies had agreed to accept compensatory time in lieu of cash as compensation for overtime. The petitioners argued that in the absence of an agreement the Standards Act prohibited a practice of compelling the use of the accumulated overtime. They pointed to a section in the Standards Act requiring an employer to honor an employee's request to use compensatory time within a reasonable period after the request is made. *Christensen*, 529 U.S. at 582, 146 L. Ed. 2d at 628, 120 S. Ct. at 1660; 29 U.S.C. § 207(o)(5) (1994). From this, the petitioners argued that the canon *expressio unius est exclusio alterius* precluded all other methods of spending compensatory time. The Court rejected this argument, finding instead that the section merely provided a "minimal guarantee" that an employer may not deny a request to use compensatory time for reasons other than those provided in 29 U.S.C. § 207(o)(5) (1994). *Christensen*, 529 U.S. at 583, 146 L. Ed. 2d at 629, 120 S. Ct. at 1660-61.

*Christensen* is not contrary to the arbitrator's decision that the election of the form of overtime is subject to mandatory arbitration. *Christensen* does not involve the election of the form of compensation. In *Christensen*, the deputies had reached an agreement with the sheriff regarding the form of overtime to be used. *Christensen* deals with the compelled use of accumulated compensation time and the limits an employer may place upon such an accumulation. See *Christensen*, 529 U.S. at 585, 146 L. Ed. 2d at 630, 120 S. Ct. at 1661 (discussing limits on the accumulation of compensatory time and how adopting the petitioners' position would turn the protections of 29 U.S.C. § 207(o)(3)(A) (1994) from a "shield into a sword").

■ Finding that the election of the form of overtime is subject to mandatory arbitration is consistent with the public policy underlying the Standards Act. The stated purpose of the Standards Act is to maintain a minimum standard of living necessary for the health, efficiency, and general well-being of workers. 29 U.S.C. § 202 (1994). Mandatory arbitration of this matter under the Act is consistent with the reading in *Christensen* of the Standards Act as providing minimal guaranties. The Standards Act does not prohibit bargaining on the issue of the election of the form of overtime. It provides minimum guidelines that cannot be violated by an agreement.

■ The regulations for the Standards Act support the coordination of the minimal guaranties of the Standards Act with agreements reached through bargaining. For example, the regulations provide:

"Agreements or understandings may provide that compensatory time off in lieu of overtime payment in cash may be restricted to certain hours of work only. In addition, agreements or understandings may provide for any combination of compensatory time off and overtime payment in cash (*e.g.*, one[-]hour compensatory time credit plus one-half the employee's regular hourly rate of pay in cash for each hour of overtime worked) so long as the premium pay principle of at least 'time and one-half' is maintained. The agreement or understanding may include other provisions governing the preservation, use, or cashing out of compensatory time so long as these provisions are consistent with [29 U.S.C. § 207(o) (1994)]. To the extent that any provision of an agreement or understanding is in violation of [29 U.S.C. § 207(o) (1994)], the provision is superseded by the requirements of [29 U.S.C. § 207(o) (1994)]." 29 C.F.R. § 553.23(a)(2) (1999) (agreement or understanding prior to the performance of work).

The arbitrator's finding of mandatory arbitration is called for by the Act and is consistent with the policy of the Standards Act.

The plaintiffs also contend that the arbitrator failed to sufficiently address the requisite factors set forth in 14(h) of the Act (5 ILCS 315/14(h) (West 2000)). Section 14(h) lists the factors an arbitrator should use when applicable. The arbitrator addressed two of these factors. The arbitrator found that similar employment in comparable communities allowed some choice on the part of the peace officers and that none gave the employer unfettered discretion in the matter. See 5 ILCS 315/14(h)(4)(B) (West 2000). The arbitrator also noted that the plaintiffs had pointed to no economic or administrative constraint that would be harmful to the county. See 5 ILCS 315/14(h)(3) (West 2000). The plaintiffs provide no indication that the other factors announced in section 14(h) weigh against the arbitrator's decision or are even applicable. The record supports the arbitrator's decision.

## CONCLUSION

Accordingly, the order of the circuit court affirming the award of the arbitrator is hereby affirmed.

Affirmed.

CHAPMAN and DONOVAN, JJ., concur.