EDWARDS, Senior Circuit Judge,
concurring:
I concur in Judge Williams’ cogent opinion for the court. It is clear from the record that, even accepting the FCC’s interpretation of Section 616, there is no substantial evidence of unlawful discrimi *995 nation to support the Commission’s decision in this case. I write separately because I believe that Tennis Channel’s complaint was untimely filed under the applicable statute of limitations encoded in 47 C.F.R. § 76.1302(f) (2010). I would rest on this ground alone if the statute of limitations requirements were jurisdictional, but they are not. Nonetheless, the issues raised by the statute of limitations issue are, in my view, very important because they highlight the agency’s failure to give fair notice to regulated parties of the rules governing the filing of complaints under Section 616. And, as explained below, the FCC’s current interpretation of subsection 76.1302(f)(3) is not only incomprehensible but it fails to credit the sanctity of the parties’ contractual commitments. Hopefully, these matters will be addressed in the FCC’s pending rulemaking. See In re Revision of the Commission’s Program Carriage Rules, Notice of Proposed Rulemaking, 26 FCC Red. 11494, 11522-23, ¶¶ 38-39, 2011 WL 3279328 (Aug. 1, 2011).
As explained in the opinion for the court, this case involves a complaint filed in 2010 by Tennis Channel, a sports programming network, with the Federal Communications Commission (“FCC” or “Commission”) against Comcast Cable Communications, LLC (“Comcast”), a multichannel video programming distributor (“MVPD”). The complaint alleged that Comcast had discriminated against Tennis Channel, in violation of Section 616 of the Communications Act of 1934, 47 U.S.C. § 536(a)(3), when it declined to distribute Tennis Channel as broadly as Golf Channel and Versus, sports networks owned by Com-cast.
After launching in 2003, Tennis Channel sought carriage on Comcast’s “Sports Tier,” a package of sports networks that are accessible to Comcast subscribers for an added fee. Tennis Channel and Com-cast executed a carriage contract in 2005 pursuant to which Comcast retained unfettered authority to distribute Tennis'Channel on any tier. Comcast elected to carry Tennis Channel on its Sports Tier. At the time when Tennis Channel entered into its contract with Comcast, Golf Channel and Versus were affiliated with Comcast and both networks were carried on more broadly distributed tiers. In 2006 and 2007, Tennis Channel offered Comcast and other MVPDs equity in exchange for broader carriage. Comcast and several other MVPDs declined. In 2009, Tennis Channel again asked Comcast to move it to a tier with broader distribution than the Sports Tier. The two parties discussed the possibility. After unproductive discussions, Tennis Channel broke off negotiations. In the end, Comcast (and other MVPDs as well) rejected Tennis Channel’s requests for broader carriage. In 2010, all major . MVPDs—including Tennis Channel’s partial owners, DirecTV and Dish Network—distributed Tennis Channel less broadly than Golf Channel and Versus.
After Comcast elected to stand on its contract rights and declined to distribute Tennis Channel more broadly, Tennis Channel filed a carriage complaint against Comcast under Section 616. The complaint alleged that Comcast discriminated against Tennis Channel on the basis of affiliation by distributing it more narrowly than Golf Channel and Versus. The Commission’s Media Bureau rejected Com-cast’s statute-of-limitations defense on the pleadings and set the matter for a hearing before an Administrative Law Judge (“ALJ”). The ALJ issued an Initial Decision finding that Comcast had violated Section 616. In a 3-2 split decision, the FCC upheld the Media Bureau’s denial of Comcast’s statute of limitations defense and affirmed the ALJ’s judgment on the merits against Comcast. See Tennis *996 Channel, Inc. v. Comcast Cable Commc’ns, LLC (“Order”), Memorandum Opinion and Order, 27 FCC Red. 8508, 2012 WL 3039209 (July 24, 2012).
In its petition for review, Comcast raises three principal claims. First, Comcast contends that Tennis Channel’s complaint should have been dismissed as untimely. Second, Comcast argues that the Commission’s Order misconstrues and misapplies Section 616. Finally, Comcast contends that the FCC’s Order violates the First Amendment because it impermissibly regulates Comcast’s speech based on its content. I will focus solely on the first contention, i.e., that Tennis Channel’s complaint was filed out of time.
FCC regulations state that “[a]ny complaint ... must be filed within one year of the date on which ... (1) The multichannel video programming distributor enters into a contract with a video programming distributor that a party alleges to violate one or more' of the rules contained in this section.” 47 C.F.R. § 76.1302(f)(1) (2010). Tennis Channel entered into its contract with Comcast in 2005; however, it did not file a complaint until 2010—long after the one-year limitations period had expired. As Comcast notes, “[t]he parties’ contract allows Comcast to carry Tennis Channel on any tier that Comcast chooses. By seeking an order that compels Comcast to carry it more broadly, Tennis Channel is attempting to rewrite the terms of the contract. Permitting Tennis Channel to reopen the limitations period for that contract-based claim at any time—simply by making a pretextual demand for broader carriage—would ... directly contradict the entire purpose of the statute of limitations.” Br. for Pet’r at 58-59. I agree.
The FCC’s Order says that the applicable limitations period is governed by 47 C.F.R. § 76.1302(f)(3), which states that “[a]ny complaint ... must be filed within one year of the date on which ... (3) A party has notified a multichannel video programming distributor that it intends to file a complaint with the Commission based on violations of one or more of the rules contained in this section.” According to the FCC, Tennis Channel’s complaint was timely under (f)(3) because Tennis Channel filed it “within one year of notifying Comcast of its intent to do so.” Order, 27 FCC Red. at 8520 ¶ 30. I can find no merit in this position. As Comcast properly observes, the FCC’s “approach not only rewrites the statute of limitations, but also nullifies it by allowing a party to a carriage contract to bring suit at any time.” Br. for Pet’r at 58.
Tennis Channel’s complaint seeks to modify the terms of the parties’ contract by demanding that Comcast move it to a tier with broader distribution. Tennis Channel has no right under the contract to pursue this demand and Comcast has no obligation to accede to it. Tennis Channel’s complaint thus raises a claim that the contract provisions giving Comcast unfettered authority to determine whether to carry Tennis Channel on its Sports Tier or some other tier violate Section 616. Therefore, under subsection (f)(1), Tennis Channel had one year from the date of contract formation to file its complaint. Because Tennis Channel’s 2010 complaint was filed well beyond a year after contract formation, the complaint was time-barred. The FCC’s purported application of subsection (f)(3), in lieu of subsection (f)(1), flies in the face of the Commission’s longstanding interpretation of 47 C.F.R. § 76.1302(f). The FCC has repeatedly explained that subsection (f)(3) applies only in cases where an MVPD denies or refuses to acknowledge a request to negotiate for carriage, which is not what happened in this case. The FCC was not free to simply abandon its longstanding construction of subsection (f)(3) without notice-and-comment rulemaking. Alaska Prof'l Hunters *997 Ass’n, Inc. v. FAA, 177 F.3d 1030, 1033-36 (D.C.Cir.1999); see also Christopher v. SmithKline Beecham Corp., — U.S. -, 132 S.Ct. 2156, 2167, 183 L.Ed.2d 153 (2012) (holding that agencies must provide “fair warning of the conduct a regulation prohibits or requires”).
I. Background
A. The Statutory and Regulatory Framework
The Cable Television Consumer Protection and Competition Act of 1992, PUB. L. NO. 102-385, § 12, 106 Stat. 1460, 1488 (1992), added Section 616 to the Communications Act of 1934. Section 616 requires the FCC to issue regulations “to prevent [an MVPD] from engaging in conduct the effect of which is to unreasonably restrain the ability of an unaffiliated video programming vendor to compete fairly by discriminating in video programming distribution on the basis of affiliation or nonaffiliation of vendors in the selection, terms, or conditions for carriage.” 47 U.S.C. § 536(a)(3). The Commission’s regulations define “affiliated” as an MVPD “ha[ving] an attributable interest” in the network. 47 C.F.R. § 76.1300(a)-(b). As noted above, the regulations also establish a statute of limitations for Section 616 complaints. The applicable regulations state:
(f) Time limit on filing of complaints. Any complaint filed pursuant to this subsection must be filed within one year of the date on which one of the following events occurs:
(1) The multichannel video programming distributor enters into a contract with a video programming distributor that a party alleges to violate one or more of the rules contained in this section; or
(2) The multichannel video programming distributor offers to carry the video programming vendor’s programming pursuant to terms that a party alleges to violate one or more of the rules contained in this section, and such offer to carry programming is unrelated to any existing contract between the complainant and the multichannel video programming distributor; or
(3)A party has notified a multichannel video programming distributor that it intends to file a complaint with the Commission based on violations of one or more of the rules contained in this section.
47 C.F.R. § 76.1302(f). The FCC recodified subsection 76.1302(f) as subsection 76.1302(h) in 2012 without any substantive change. For the sake of consistency with the parties’ briefing and the FCC’s Order, I will refer to subsection 76.1302(f).
B. Facts and Procedural History
Comcast is the largest MVPD in the United States. It offers cable television programming to its subscribers in several different distribution “tiers”—i.e., packages of programming services—at different prices. Core programming is contained in Comcast’s “Expanded Basic Tier,” or its digital counterpart, the “Digital Starter Tier,” which are its mostly widely distributed tiers. The more expensive “Digital Preferred Tier” provides customers with access to additional networks and is Comcast’s second most widely-distributed tier. Comcast’s Sports and Entertainment Package (“Sports Tier”) consists of a package of sports-related networks and is available to Comcast subscribers for an additional fee. The Sports Tier is not as widely distributed as the Expanded Basic, Digital Starter, and Digital Preferred tiers.
Golf Channel and Versus are cable sports networks that were launched in 1995. Versus was known as the Outdoor Life Network when it launched and is now *998 known as NBC Sports Network. (For the sake of consistency with the parties’ briefing and the FCC’s Order, I will refer to the network as Versus.) Golf Channel provides coverage of golf tournaments and other golf-related programming. Versus provides coverage of numerous sports, including hockey, college football and basketball, lacrosse, hunting, and fishing. Both networks paid substantial sums beginning in 1995 to induce MVPDs, including Comcast, to distribute them broadly. Both networks are generally carried on Comcast’s Digital Starter or Expanded Basic tiers. Comcast owned a minority interest in Golf Channel and Versus when they launched in 1995 and subsequently became the controlling owner of both networks.
Tennis Channel, a network that provides tennis-related programming, launched in 2003. The evidence in the record indicates that, by that time, “it was more difficult for new networks to obtain broad distribution than in 1995 because the associated costs for cable operators had increased and because competition from satellite and telephone providers had reduced cable operators’ ability to absorb those costs.” Br. for Pet’r at 7 (citing Joint Appendix 422-25, 519-22). In 2005, Tennis Channel and Comcast entered into a carriage contract reserving to Comcast the right to choose on which tier to carry the network. Com-cast chose to carry, and still carries, Tennis Channel on its Sports Tier. Tennis Channel negotiated agreements with other MVPDs that granted similar rights with respect to the network’s level of carriage.
In 2006 and 2007, Tennis Channel offered Comcast and other MVPDs equity in exchange for broader carriage. Two satellite companies—DirecTV and Dish Network—accepted that offer, became partial owners of Tennis Channel, and increased their distribution of the network. But Comcast and at least one other MVPD declined the offer. In 2009, Tennis Channel presented Comcast with two proposals for broader distribution on Comcast’s Digital Starter or Digital Preferred tiers. Comcast argues that it saw no economic benefit in Tennis Channel’s proposals, and Tennis Channel broke off negotiations in June 2009. Tennis Channel’s tier placement position vis-á-vis Golf Channel and Versus was the same in 2010 as it had been in 2005 when Comcast and Tennis Channel executed their carriage contract. Indeed, as noted above, in 2010, all major MVPDs—including DirecTV and Dish Network—distributed Golf Channel and Versus more broadly than Tennis Channel.
In December 2009, Tennis Channel notified Comcast of its intent to file a Section 616 complaint. In January 2010, Tennis Channel filed its complaint asserting that it was
necessitated by Comcast’s discriminatory refusal to provide Tennis Channel with the broader carriage that it provides to the similarly situated sports networks it owns (such as the Golf Channel and Versus) and that is otherwise appropriate in light of Tennis Channel’s quality and performance.
Compl. at i. The FCC’s Media Bureau rejected Comcast’s argument that the complaint was time-barred and referred to the matter to an ALJ. The Tennis Channel, Inc. v. Comcast Cable Commc’ns LLC, Hearing Designation Order, 25 FCC Red. 14149, 2010 WL 3907080 (Oct. 5, 2010). After a six-day hearing, the ALJ found that Comcast had violated Section 616 and ordered Comcast to carry Tennis Channel “at the same level of distribution” as Golf Channel and Versus. Tennis Channel, Inc. v. Comcast Cable Commc’ns, LLC, Initial Decision, 26 FCC Rcd. 17160, 2011 WL 6416431 (Dec. 20, 2011). Comcast appealed to the full Commission, which ruled 3-2 to reject Comcast’s statute-of-limita *999 tions defense and uphold most of the ALJ’s decision. Tennis Channel, Inc. v. Comcast Cable Commc’ns, LLC, (“Order”), Memorandum Opinion and Order, 27 FCC Rcd. 8508, 2012 WL 3039209 (July 24, 2012). After Comcast filed a petition for review with this court, we granted its motion to stay the Order pending our final decision in this case.
II. Analysis
The parties agree that Tennis Channel’s complaint must be dismissed if it was untimely. Comcast contends that the complaint should have been dismissed pursuant to 47 C.F.R. § 76.1302(f)(1). The FCC, however, concluded that the applicable statute of limitations was governed by 47 C.F.R. § 76.1302(f)(3). Order, 27 FCC Rcd. at 8519-22 ¶¶ 28-34. The agency found that Tennis Channel’s complaint was timely because it was filed in January 2010, one month after Tennis Channel notified Comcast of its intent to file and seven months after Comcast declined Tennis Channel’s demand to relocate to a different distribution tier. Id. at 8519-20 ¶ 30 & n. 105.
Comcast is right that the FCC’s application of the statute of limitations in this case cannot be reconciled with the agency’s original and consistent view that subsection (f)(3) only applies where a “defendant unreasonably refuses to negotiate [for carriage] with [a] complainant.” 1998 Biennial Regulatory Review—Part 76— Cable Television Service Pleading and Complaint Rules (“1999 Order on Reconsideration”), Order on Reconsideration, 14 FCC Rcd. 16433, 16435 ¶5, 1999 WL 766253 (Sept. 29, 1999). The FCC concedes that Tennis Channel’s complaint is time-barred under this interpretation of the rule. See Br. for Resp’ts at 64 (“[T]he rule as originally promulgated was limited to denials or to refusals to negotiate for carriage.... ”). The Commission has never properly amended the statute of limitations regulations to embrace the interpretation that it now advances. It is therefore clear that Tennis Channel filed its complaint out of time.
A. Standard of Review
The governing law makes it plain that this court owes no deference to the Commission’s current interpretation of 47 C.F.R. § 76.1302(f)(3). A court “must defer to [an agency’s] interpretation [of a regulation] unless an alternative reading is compelled by ... indications of the [agency’s] intent at the time of the regulation’s promulgation.” Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381,129 L.Ed.2d 405 (1994). An agency’s interpretation of its own regulation is entitled to no deference if it has, “under the guise of interpreting á regulation, [created] defacto a new regulation,” Christensen v. Harris Cnty., 529 U.S. 576, 588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), or subjected a party to “unfair surprise,” Christopher, 132 S.Ct. at 2166-70. See also Akzo Nobel Salt, Inc. v. Fed. Mine Safety & Health Review Comm’n, 212 F.3d 1301, 1304-05 (D.C.Cir.2000) (holding that deference is inappropriate when the agency “flip-flops,” offering a litigation position that differs from interpretations previously adopted by the agency, or when the agency offers contradictory interpretations on appeal). If an agency’s present interpretation of a regulation would essentially amend the contested regulation, then the modification can only be made in accordance with the notice and comment requirements of the APA. Alaska Prof'l Hunters, 177 F.3d at 1033-36.
B. The Applicable Statute of Limitations
1. Regulatory History of the Statute of Limitations
The FCC promulgated the statute of limitations for Section 616 complaints in *1000 1993, pursuant to notice-and-comment rulemaking, as part of its original implementation of Section 616. See Implementation of Sections 12 and 19 of the Cable Television Consumer Protection and Competition Act of 1992—Development of Competition and Diversity in Video Programming Distribution and Carriage, Second Report and Order, 9 FCC Red. 2642, 2652-53 ¶25, 1993 WL 433631 (Oct. 22, 1993). Subsection (f)(3), as originally promulgated, read as follows:
Any complaint filed pursuant to this subsection must be filed within one year of the date on which one of the following events occurs ... (3) the complainant has notified a multichannel video programming distributor that it intends to file a complaint with the Commission based on a request for carriage or to negotiate for carriage of its programming on defendant’s distribution system that has been denied or unacknowledged, allegedly in violation of one or more of the rules contained in this sub-part.
Id. at 2676. Thus, as promulgated, subsection (f)(3) plainly applied only when an MVPD denied or refused to acknowledge a request to negotiate for carriage. The FCC does not dispute that the complaint in this case is untimely under the regulation as written in 1993. Br. for Resp’ts at 64. Therefore, if the Commission has never acted to modify the substance of the regulation since its promulgation in 1993 it follows a fortiori that Tennis Channel’s complaint is untimely. A review of this regulation’s history shows that the substance of subsection (f)(3) never has been amended by the Commission to give it the meaning that the agency now seeks to ascribe to it.
1994 Amendment: In 1994, the FCC issued an order in response to an industry group petition for partial reconsideration of the Section 616 regulations. See Implementation of the Cable Television Consumer Protection and Competition Act of 1992 Development of Competition and Diversity in Video Programming Distribution and Carriage (“199k Amendment”), Memorandum Opinion and Order, 9 FCC Red. 4415, 1994 WL 414309 (Aug. 5, 1994). The petitioners in that action “contend[ed] that Section 76.1302 ... [was] too narrowly drafted because it [did] not specifically afford standing to file a complaint to any MVPD aggrieved by a violation of Section 616. Petitioners urge[d] the Commission to amend the scope of Section 76.1302 to affirmatively afford standing to file a complaint to any third party MVPD aggrieved by carriage agreements between other MVPDs and programming vendors that violate Section 616.” Id. at 4416 ¶ 8. The FCC accepted the suggestion and amended several regulatory provisions to achieve the end sought. Subsection (f)(3) was edited in the following ways:
Any complaint filed pursuant to this subsection paragraph must be filed within one year of the date on which one of the following events occurs ... (3) the complainant A party has notified a multichannel video programming distributor that it intends to file a complaint with the Commission based on a request for carriage or to negotiate for carriage of its programming -on defendant’s distribution system that has been denied or ■unacknowledged, al-legedly-in violations of one or more of the rules contained in this subpart section.
Cable TV Act of 1992—Development of Competition and Diversity in Video Programming; Distribution and Carriage, 59 Fed.Reg. 43,776-01, 43,777-78 (Aug. 25, 1994) (strikethrough and emphasis added).
The language deleted from subsection (f)(3) was excised solely to avoid any suggestion that (f)(3) was meant to reference only complaints by video programmers. There is nothing in the Commission’s 1994 action to suggest that the agency meant to make any substantive change to subsection *1001 (f)(3) beyond allowing for broader standing for MVPDs. Quite the contrary. The Memorandum Opinion and Order expressly states that the sole purpose of the regulatory edits was to afford standing to file a Section 616 complaint to any third party MVPD aggrieved by carriage agreements between other MVPDs and programming vendors:
The Commission has determined that it is in the public interest to grant [the] petition and to amend our implementing rules to specifically afford standing to MVPDs to file complaints under Section 616 of the 1992 Cable Act.
1991 Amendment, 9 FCC Rcd. 4418-19 ¶ 24. The FCC also stated that the same procedural rules would apply to complaints filed by MVPDs. Id. at 4419 ¶ 24 n. 47 (“As noted in the [original implementation], a one-year statute of limitations will be applied to program carriage complaints.”).
1999 Order on Reconsideration: Any questions about the meaning of subsection (f)(3) following the 1994 edits were answered in 1999. As part of its 1998 biennial regulatory review process, the Commission issued a Report and Order after notice and comment to “reorganize and simplify the Commission’s Part 76 Cable Television Service pleading and complaint process rules.” 1998 Biennial Regulatory Review—Part 76—Cable Television Service Pleading and Complaint Rules, Report and Order, 14 FCC Rcd. 418, 418 ¶ 1, 1999 WL 377764 (Jan. 8, 1999). The Commission subsequently issued an order denying a petition' for reconsideration of these changes filed by EchoStar Communications Corporation. 1999 Order on Reconsideration, 14 FCC Rcd. 16433. The order is relevant here because it carefully explains the statute of limitations for Section 616 complaints.
Tellingly, as can be seen in the block-quoted passage below, the Commission’s 1999 Order on Reconsideration is directly contrary to the Commission’s interpretation of 47 C.F.R. § 76.1302(f)(3) in this case:
The dispute resolution processes in Part 76 for program access, program carriage and open video system complaints follow similar procedural rules that were designed to achieve an expedient resolution of complaints. The rules contain three like provisions which set forth a one year limitations period for bringing complaints. The rules list three events that trigger the running of the limitations period: (1) complainant and defendant enter into a contract alleged to violate the rules; (2) unrelated to an existing contract, defendant makes an offer to complainant that allegedly violates the rules; or (3) defendant unreasonably refuses to negotiate with complainant. In the Part 76 Order, the Commission clarified the appropriate interaction between the limitations period for alleging an existing contract violates the rules and the limitations period for alleging that an offer to the complainant violates the rules.... The rules adopted in the Part 76 Order explain that complaints based on allegedly discriminatory contracts must be brought within one year of entering into the contract and that an allegedly discriminatory offer to amend such contract made more than one year after the execution thereof does not reopen such contract to program access liability. For example, in the program access context, this amendment explains that an offer to amend an existing contract that has been in effect for more than one year does not reopen the existing contract to complaints that the provisions thereof are discriminatory.
Id. at 16435-36 ¶ 5 (underlining added).
The 1999 Order on Reconsideration thus confirms that subsection (f)(3) applies only *1002 to refusals to negotiate for carriage and that proposals to amend a carriage contract do not reset the statute of limitations. This interpretation is perfectly consistent with the regulations as promulgated by the Commission in 1993. It confirms that the 1994 edits to the statute of limitations were not intended to alter the substance of the third trigger, only the scope of who could pursue Section 616 complaints. And the parties have not directed us to any further embellishments or clarifications by the Commission of 47 C.F.R. § 76.1302(f). Indeed, before the decision in this case, the Commission seems never to have called into question the regulatory interpretation of subsection (f)(3) offered in 1993,1994, and 1999.
2008 Media Bureau Decisions: As noted above, the Media Bureau rejected Comcast’s statute-of-limitations defense on the pleadings and set the matter for a hearing on the merits before an ALJ. The Tennis Channel, Inc. v. Comcast Cable Commc’ns LLC, Hearing Designation Order, 25 FCC Rcd. 14149, 2010 WL 3907080 (Oct. 5, 2010). In so doing, the Media Bureau relied on two of its own decisions from 2008. In these earlier cases, the Media Bureau held that “Bureau precedent establishes that a complainant may have a timely program carriage claim in the middle of a contract term if the basis for the claim is an allegedly discriminatory decision made by the MVPD, such as tier placement, that the contract left to the MVPD’s discretion.” Id. at 14158 ¶ 15 (citing NFL Enterprises LLC v. Comcast Cable Commc’ns, LLC, Hearing Designation Order, 23 FCC Red. 14,787,14820 ¶ 70 (Oct. 10, 2008); MASN v. Comcast Corp., Hearing Designation Order, 23 FCC Rcd. 14,787, 14,834-35 ¶105 (Oct. 10, 2008)). Both cases settled before they were heard by an ALJ and without any appeal to or decision by the Commission. See id. at 14,156 ¶ 13 n. 63.
These Media Bureau decisions are not controlling here because their reasoning was never affirmed by the Commission. And, most significantly, the two cited Media Bureau decisions are directly contrary the Commission’s interpretation of subsection (f)(3) that “an offer to amend an existing contract that has been in effect for more than one year does not reopen the existing contract to complaints that the provisions thereof are discriminatory.” 1999 Order on Reconsideration, 14 FCC Rcd. at 16436 ¶ 5.
As we explained in Comcast Corp. v. FCC, 526 F.3d 763, 769 (D.C.Cir.2008), this court follows the “well-established view that an agency is not bound by the actions of its staff if the agency has not endorsed those actions.” It is true that “in the absence of Commission action to the contrary, the Media Bureau decisions have the force of law. 47 U.S.C. § 155(c)(3). But this simply means that those rulings are binding on the parties to the proceeding. ... [Unchallenged staff decisions are not Commission precedent....” Id. at 770. Therefore, pursuant to the law of the circuit, it is quite clear that the 2008 Media Bureau decisions did not in any way disturb the FCC’s settled treatment of 47 C.F.R. § 76.1302(f).
2. The Commission’s Changed Interpretation of 47 C.F.R. § 76.1302(f)
This regulatory history shows that the FCC had never, until the Order on review, ascribed to the statute of limitations the meaning it now claims. And the Commission concedes that under its longstanding interpretation of 47 C.F.R. § 76.1302(f), which it has repeatedly articulated, Tennis Channel’s complaint in this action is untimely.
Thus, there is much force to Comcast’s assertion that it had no notice that the Commission would abruptly change its *1003 view of subsection (f)(3) in this case. The problem is compounded because the Commission’s decision wholly fails to account for the 1999 Order on Reconsideration. The decision gives only a cursory response to Comcast’s argument that the (f)(3) trigger concerns only refusals to deal or similar conduct, merely stating that
we find no support for that view in the text. Comcast relies upon the fact that the rule was originally promulgated with this limitation. However, the Commission removed the limiting language in 1994, and there is no support for reading it back in notwithstanding its willful deletion.
Order, 27 FCC Rcd. at 8521 ¶ 32. This response is rather astonishing in light of the Commission’s explanation of the 1994 edits to the regulation and the 1999 Order on Reconsideration. As noted above, the Commission made it clear that the 1994 edits were intended solely to avoid any suggestion that subsection (f)(3) was meant to reference only complaints by video programming vendors. And in 1999, the Commission confirmed that the (f)(3) trigger relates to situations in which a “defendant unreasonably refuses to negotiate with [a] complainant,” nothing more. 1999 Order on Reconsideration, 14 FCC Rcd. at 16435 ¶ 5.
The FCC simply ignores this regulatory history, obviously because it cannot be squared with the Commission’s current interpretation of the applicable regulation. A court need not defer to an agency’s interpretation of a disputed regulation when an alternative reading is compelled by “indications of the [agency’s] intent at the time of the regulation’s promulgation.” Thomas Jefferson Univ., 512 U.S. at 512, 114 S.Ct. 2381. This principle controls the disposition of this case, for it is undisputed that the Commission’s current interpretation of the regulation flies in the face of the agency’s intent at the time of promulgation of 47 C.F.R. § 76.1302(f).
3. Subsection (f)(1) Prescribes the Applicable Statute of Limitations in This Case
Under subsection (f)(1), the one-year statute of limitations begins running when an MVPD “enters into a contract with a video programming distributor that a party alleges to violate [Section 616 and its implementing regulations].” 47 C.F.R. § 76.1302(f)(1). The Commission held that subsection (f)(1) was inapplicable here because “Tennis Channel was not trying to demand a unilateral change in the existing terms of its contract with Comcast; it was asking that the existing contract be performed—that Comcast exercise its contractual discretion—consistent with its obligations under Section 616.” Order, 27 FCC Red. at 8521 ¶ 33. This is a perplexing statement, bordering on oxymoronic.
Under the terms of the carriage contract, Comcast retains the unfettered right to carry Tennis Channel on a distribution tier of Comcast’s own choosing. Neither Tennis Channel nor the Commission argues that Tennis Channel retained an affirmative right under the contract to demand that Comcast reconsider its distribution tier. Instead, they argue that Comcast’s right to assign Tennis Channel to a tier of its choosing is somehow tantamount to Tennis Channel’s right to demand that Comcast revisit its initial exercise of that choice. The FCC’s Order elides this distinction, reasoning that because Comcast could have reassigned Tennis Channel it was under an obligation to consider Tennis Channel’s proposal. But nothing in the parties’ contract supports this view. Therefore, in demanding “that Comcast exercise its contractual discretion” to reassign Tennis Channel to a different tier, Tennis Channel was simply insisting on a material change in the contract’s terms. Subsection (f)(1) thus clearly applies, meaning *1004 that Tennis Channel’s claim became time-barred in 2006.
The FCC argues that if it is required to adhere to its original and longstanding interpretation of 47 C.F.R. § 76.1302(f)(3) “a programming network effectively would be barred from complaining about any carriage-related discrimination occurring more than one year after the execution of its contract.” Br. for Resp’ts at 67. One need only consider the record in this case to see that this is a shallow argument. Tennis Channel was in the same position relative to the affiliated Golf Channel and Versus networks in 2010 as it was in 2005. That is, Tennis Channel was on a lower tier than the other two networks in 2005 when it negotiated the contract affording Comcast unfettered authority as to its placement and remained so in 2010. Tennis Channel argues that circumstances had changed by 2010 because its “quality and performance” had improved since entering into the contract. Compl. at i. This argument is a classic non sequitur, however, because the parties’ contract does not require Comcast to take into account “quality and performance” in deciding whether to distribute Tennis Channel more broadly-
Most importantly, the parties’ agreement does not in any way suggest, as the Commission held, that Comcast is obliged to “exercise its contractual discretion” in considering whether to reassign Tennis Channel to a different tier. Indeed, the word “discretion” does not even appear in the contract provision that Tennis Channel and the FCC cite. Tennis Channel introduced this term in its briefing and the Commission attempts to read it into the carriage agreement to abrogate Comcast’s lawful contract rights. The truth is that the parties’ contract simply confirms that Comcast has the sole and unfettered authority to determine the tier placement of Tennis Channel. By demanding that Comcast revisit its concededly lawful initial decision and consider placing it on the same tier as Golf Channel and Versus, Tennis Channel sought to reopen the contract. And, because this demand was nothing more than “an offer to amend an existing contract that has been in effect for more than one year,” 1999 Order on Reconsideration, 14 FCC Red. at 16436 ¶ 5, it “does not reopen the existing contract to complaints that the provisions thereof are discriminatory,” id.
Furthermore, Tennis Channel’s rights would not be so harmed by this outcome as the FCC suggests. Because most businesses hope to become more successful over time, Tennis Channel could have anticipated in 2005 that, at some point in the future, it might prefer placement on a more widely distributed tier. Therefore, when the carriage contract was formed, Tennis Channel could have bargained for a provision to increase its distribution contingent upon improvements to its “quality and performance.” If Comcast had declined such terms on the basis of its nonaffiliation with Tennis Channel, that might have given rise to a Section 616 complaint under the existing regulations.
Instead, it is Comcast’s contract rights that were completely disregarded by the Commission’s actions in this case. Section 616 simply does not sanction what the Commission proposes to do here. The Commission may now be of the view that the controlling construction of subsection (f)(3) that it embraced in 1993, 1994, and 1999 is unsatisfactory because it may not account for some situations in which a party commits a violation of Section 616 that is unrelated to its lawful contractual commitments. But if that is so, then the FCC may amend subsection (f)(3) pursuant to notice-and-comment rulemaking, not by fiat in an adjudicatory action in which a *1005 party had no prior notice of the rule that the Commission seeks to enforce.
It is unnecessary to consider this possibility, however, because it is not properly before us. The bottom line here is that, under the Commission’s established construction of 47 C.F.R. § 76.1302(f), the statute of limitations began to run under subsection (f)(1) in 2005, not under subsection (f)(3) in 2009. As a result, Tennis Channel’s complaint was out of time and should have been dismissed.
4. The Commission’s Laches Argument
The Commission seemingly understood that its position made little sense, especially in light of the precedent established by its 1993, 1994, and 1999 orders. To compensate for the obvious weaknesses in its decision, the Commission layered a new rule of “laches” onto the requirements of subsection (f)(3). Pursuant to this further amendment of the statute of limitations, the Commission stated:
[W]e read subsection 76.1302(f)(3) consistent with the doctrine of laches to impliedly require notification of an intent to file a complaint within a reasonable time period of discovery of the allegedly unlawful conduct. Because the allegedly unlawful conduct at issue here occurred within one year of the filing of the complaint, we need not determine precisely what period of time would be “reasonable” here.
Order, 27 FCC Rcd. at 8520 ¶ 30 n. 105. Comcast justly objects to this unexpected and largely incomprehensible new rule of laches:
[T]his further rewriting of the limitations regulation, to add a malleable [laches] exception whose scope is known only to the FCC, only compounds the uncertainty that its interpretation produces.
The Order also does not attempt to explain how Tennis Channel satisfied its new laches requirement here. Nor could it, given that Tennis Channel has known since 2005 that Comcast carried Golf Channel and Versus broadly, but did not file its complaint until 2010....
Under any reasonable application of laches, this deliberate, unexcused delay should have resulted in the dismissal of the complaint. The Order avoids that result only by characterizing the evidence of Tennis Channel’s strategic conduct as irrelevant to the timeliness of its complaint. But it is arbitrary for the Order both to assert that its interpretation of the statute of limitations is backstopped by a “reasonable time” requirement, and to ignore the evidence that Tennis Channel, without basis, sat on its claim for years before bringing suit.
Br. for Pet’r at 60-61.
The Commission’s invocation of “laches” is also patently at odds with its claim that the terms of subsection (f)(3) plainly require the result reached in this case. The Commission suggests that the (f)(3) trigger applies straightforwardly within one year after a complaining party gives notice that it intends to file a complaint. But if this were so clear, there would be no need for a rule of laches. The Commission instead acknowledges that subsection (f)(3) is confusing under its present view of the regulation because “[t]he third trigger does not specify precisely what impermissible conduct starts the clock.” Order, 27 FCC Rcd. at 8520 ¶ 30. The Commission’s Order relies in part on a 2011 Notice of Proposed Rulemaking, in which the agency acknowledged that the terms of subsection 76.1302(f) are ambiguous and announced its intention to amend it for clarity. Id. at 8520 ¶ 30 n. 105 (citing In re Revision of the Commission’s Program Carriage Rules, Notice of Proposed Rulemaking, 26 *1006 FCC Rcd. 11494, 11522-23, ¶¶ 38-39, 2011 WL 3279328 (Aug. 1, 2011)). The Commission’s position here is thus amusing, to say the least: in the Order under review, the Commission suggests that (f)(3) is clear if overlaid with a new rule of laches; and yet, in the very same footnote, the Commission cites to a Rulemaking initiated for the purpose of resolving that subsection’s ambiguity. Id. The truth of the matter is that the Commission’s current position on the meaning of subsection (f)(3) is hopelessly confused and far removed from the regulatory interpretations that it espoused in 1993, 1994, and 1999.
C. The Commission’s Action in This Case Defies the APA and Requirements of Fair Notice
What is obvious here is that the FCC is essentially trying to rewrite its regulations without following the applicable notice- and-comment procedures required by the APA. The Commission may now be of the view that the controlling construction of subsection (f)(3) that it embraced in 1993, 1994, and 1999 is unsatisfactory because it may not account for some situations in which a party commits a violation of Section 616 that is unrelated to its lawful contractual commitments. But if that is so, then the FCC must amend subsection (f)(3) pursuant to notice-and-comment rulemaking, not by fiat in an adjudicatory action in which a party had no prior notice of the rule that the Commission seeks to enforce. See generally Harry T. Edwards, Linda A. Elliott & Marin K. Levy, Federal Standards of Review § XIII.E (2d ed.2013) (discussing the requirements of “fair notice”).
The court carefully explained this principle in Alaska Professional Hunters Association:
Our analysis ... draws on Paralyzed Veterans of America v. D.C. Arena, 117 F.3d 579, 586 (D.C.Cir.1997), in which we said: “Once an agency gives its regulation an interpretation, it can only change that interpretation as it would formally modify the regulation itself: through the process of notice and comment rulemaking.” We there explained why an agency has less leeway in its choice of the method of changing its interpretation of its regulations than in altering its construction of a statute. “Rule making,” as defined in the APA, includes not only the agency’s process of formulating a rule, but also the agency’s process of modifying a rule. 5 U.S.C. § 551(5). See Paralyzed Veterans, 117 F.3d at 586. When an agency has given its regulation a definitive interpretation, and later significantly revises that interpretation, the agency has in effect amended its rule, something it may not accomplish without notice and comment. Syncor Int’l Corp. v. Shalala, 127 F.3d 90, 94-95 (D.C.Cir.1997), is to the same effect: a modification of an interpretive rule construing an agency’s substantive regulation will, we said, “likely require a notice and comment procedure.”
177 F.3d at 1033-34; see also SBC Inc. v. FCC, 414 F.3d 486, 498 (3d Cir.2005) (“[I]f an agency’s present interpretation of a regulation is a fundamental modification of a previous interpretation, the modification can only be made in accordance with the notice and comment requirements of the APA.”); Shell Offshore Inc. v. Babbitt, 238 F.3d 622, 629 (5th Cir.2001) (“[T]he APA requires an agency to provide an opportunity for notice and comment before substantially altering a well established regulatory interpretation.”).
The Supreme Court recently reinforced this point in Christopher v. SmithKline Beecham Corp., — U.S. -, 132 S.Ct. 2156, 2167, 183 L.Ed.2d 153 (2012), there holding that an agency is obliged to “provide regulated parties fair warning of the conduct [a regulation] prohibits or requires.” It follows, therefore, that an *1007 agency cannot change its interpretation of a regulation so as to cause “unfair surprise” to regulated parties. Id.; see also FCC v. Fox Television Stations, Inc., — U.S. -, 132 S.Ct. 2307, 2317, 183 L.Ed.2d 234 (2012) (“A conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.”). Yet, in failing to provide any notice to MVPDs about how and when they may be subject to Section 616 claims, the FCC’s actions against Comcast in this case constitute exactly that kind of “unfair surprise.”
In sum, the limitations period under 47 C.F.R. § 76.1302(f)(3) does not apply here because the Commission has consistently held that the (f)(3) trigger is applicable only in situations when an MVPD denies or refuses to acknowledge a request to negotiate for carriage. Tennis Channel’s complaint does not include any such claim. Indeed, Tennis Channel, not Comcast, terminated discussions between the parties in 2009. Neither Comcast’s refusal to reassign Tennis Channel to a more broadly distributed tier nor Tennis Channel’s notice of its intention to file a Section 616 complaint triggered a new statute of limitations period under 47 C.F.R. § 76.1302(f)(3). Under the FCC’s governing regulations, “an offer to amend an existing contract that has been in effect for more than one year does not reopen the existing contract to complaints that the provisions thereof are discriminatory.” 1999 Order on Reconsideration, 14 FCC Red. at 16436 ¶ 5. The reason for the FCC’s rule is clear: to allow a video programming vendor to restart an expired limitations period simply by asking to negotiate a better deal under an existing agreement would render meaningless the limitations period in subsection (f)(1).
It is undisputed that the complaint was filed more than one year after Comcast and Tennis Channel entered into their carriage contract. The contract was executed in 2005 and the limitations period under 47 C.F.R. § 76.1302(f)(1) expired one year later. Tennis Channel’s complaint simply alleges that Comcast’s continued carriage pursuant to the terms of the 2005 agreement is discriminatory. Therefore, the complaint is almost four years late and should be dismissed as time-barred.