[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10537
Non-Argument Calendar

_____

D.C. Docket No. 8:16-cv-01076-SDM-JSS

KIMBERLY JOHNSON,
DEBORAH BRAZELL,

Plaintiffs - Appellants,

versus

KELLIE JENNINGS,
SHELLEY MORRIS,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 21, 2019)

Before TJOFLAT, MARCUS, and ROSENBAUM, Circuit Judges.

PER CURIAM:

This appeal is from a judgment entered pursuant to a jury verdict on a reasonable-modification claim under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–31.  Because we write for the parties, we set out facts only as they are needed to support our analysis.

Plaintiffs Kimberly Johnson and Deborah Brazell are the mother and grandmother, respectively, of K.J., a ten-year old autistic girl who suffers from Fabry Disease.  Fabry Disease, per Plaintiffs' brief, is a rare genetic disorder that causes pain in the hands and feet, decreased ability to sweat, cloudy vision, gastrointestinal problems, ringing in the ears, and hearing loss.  K.J.'s gastrointestinal problems necessitated surgery to create an abdominal stoma, which is a small opening on the skin's surface to divert the flow of feces.  K.J.'s stoma must be flushed twice per day for a total of five to ten hours.

Johnson and K.J. were living in a small one-bathroom home with inadequate plumbing.  This deficiency, though surely problematic for anyone, was particularly difficult for Johnson given the twice-daily flushings that K.J. requires as well as the risk that cross-contamination poses for K.J.'s compromised immune system. So Johnson began to search for a new residence, a search that led her to Defendant Shelley Morris, Defendant Kellie Jennings's leasing agent.

When Morris showed Plaintiffs the rental property at issue in this case, Plaintiffs emphasized the urgency of their need for a larger home with adequate

2

plumbing.  After co-signing the lease, they also informed Morris that they would need a chain lock on the front door to prevent K.J. from "eloping."[1]

After seventeen days had passed from the time Plaintiffs signed the lease, the request for the chain lock had not been fulfilled.  Plaintiffs abandoned their plans to move into the residence and sought to avoid their obligations under the lease.  When Defendants refused, Plaintiffs sued for the denial of a reasonable modification.[2]

After granting in part and denying in part Plaintiffs' Motion for Summary Judgment, the District Court determined that two questions remained for the jury to decide: (1) whether Defendants denied Plaintiffs' request for a modification and (2) whether the requested modification was reasonable.  The jury returned a special verdict and found that Defendants had not denied Plaintiffs' request and thus, per the Court's instructions, did not reach the second question.

Plaintiffs raise two evidentiary objections on appeal.  First, that the District Court erroneously excluded certain evidence of K.J.'s gastrointestinal problems as unduly prejudicial.  *See* Fed. R. Evid. 403.  And second, that the Court erroneously admitted a code-enforcement official's testimony as lay testimony when it should

---

[1] We find this choice of words a bit odd, but the parties have used it to describe K.J.'s tendency to escape from home, despite being told to stay indoors.

[2] Defendants concede that K.J.'s tendency to elope is related to her disability.

3

have been qualified as expert testimony. *Compare* Fed. R. Evid. 701, *with* Fed. R. Evid. 702.

We hold that the District Court did not abuse its discretion in limiting the evidence of K.J.'s gastrointestinal problems. This is because (1) the marginal value of the proffered evidence was slight compared to the risk of unfair prejudice and (2) to the extent it was relevant to Johnson's credibility as a witness, Plaintiffs themselves undermined her credibility and thus have no basis to admit otherwise irrelevant evidence to cure a problem they created. We further hold that any error pertaining to the code-enforcement official's testimony was necessarily harmless: The testimony was relevant only to the second question submitted to the jury—the reasonableness of the modification request—which the jury did not reach.

I.

The District Court excluded certain evidence of K.J.'s gastrointestinal problems as unduly prejudicial under Rule 403 of the Federal Rules of Evidence. It permitted counsel to allude to K.J.'s "extraordinary gastrointestinal issues and frequent bathroom usage" but barred him from "detailing . . . those issues," particularly as it related to the "[stoma] and how many times a day she has to go to the bathroom." We review a district court's evidentiary rulings for abuse of discretion. *Shealy v. City of Albany*, 89 F.3d 804, 806 (11th Cir. 1996) (per curiam).

4

Rule 403 permits a district court to exclude otherwise relevant evidence when the "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. To review a district court's Rule 403 determination, we must assess both the relevance and the risk of unfair prejudice.

Begin with relevance. A fact, to be relevant, must be "of consequence in determining the action." Fed. R. Evid. 401(b). To determine whether a fact is of consequence, we look to the elements of the cause of action.

The FHA makes it unlawful, among other things, "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). "Discrimination" includes the "refusal to permit . . . reasonable modifications of existing premises . . . if such modifications may be necessary to afford . . . full enjoyment of the premises." *Id.* § 3604(f)(3)(A). A reasonable-modification plaintiff must prove "that she suffers from a disability, that she requested an accommodation or modification, that the defendant housing provider refused to make the accommodation or to permit the modification [the denial element], and that the defendant knew or should have known of the disability at the time of the refusal." *Hollis v. Chestnut Bend*

5

*Homeowners Ass'n*, 760 F.3d 531, 541 (6th Cir. 2014).  The claim also requires

proof of "both the reasonableness and necessity of the requested modification."  *Id.*

Evidence of K.J.'s stoma and the details of her bathroom needs are relevant

to two elements of the claim.[3]

First, it is "of consequence" to the disability element, even if Defendants

conceded that this element was met.  *See, e.g.*, *Old Chief v. United States*, 519 U.S.

172, 186–87, 117 S. Ct. 644, 653 (1997) (stating the "standard rule that the

prosecution is entitled to prove its case by evidence of its own choice, or, more

exactly, that a criminal defendant may not stipulate or admit his way out of the full

evidentiary force of the case as the Government chooses to present it").

And second, it is relevant to the denial element.  As Plaintiffs argue, the

"urgent need for new housing because of the existing inadequate facilities is

probative of and an essential factor in whether 17 days after the refusal to allow the

modification was a constructive denial."

A "denial" can be actual or constructive.  As we explained in *Bhogaita v.*

*Altamonte Heights Condominium Ass'n*, 765 F.3d 1277 (11th Cir. 2014), the

"failure to make a timely determination after meaningful review amounts to

---

[3] Plaintiffs contend that the evidence is relevant to the reasonableness and damages elements.  But because we hold that the District Court did not abuse its discretion in excluding the evidence, and because the jury did not reach the questions of reasonableness and damages, we need not reach these arguments.

constructive denial of a requested accommodation, 'as an indeterminate delay has the same effect as an outright denial.'" *Id.* at 1286 (quoting *Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000)). In so holding, we afforded *Skidmore* deference[4] to a joint statement of the Department of Justice and the Department of Housing and Urban Development. *See Bhogaita*, 765 F.3d at 1286. This action, to be sure, is a reasonable-*modification* claim, not, as was the case in *Bhogaita*, a reasonable-accommodation claim. Fortunately, the same agencies published a joint statement on reasonable modification, too, and the meaning of "denial" is essentially the same. A housing provider must give "prompt responses to a reasonable modification request." U.S. Dep't of Justice & U.S. Dep't of Hous. and Urban Dev., Reasonable Modifications Under the Fair Housing Act 10 (March 5, 2008). And "undue delay in responding to a reasonable modification request may be deemed a failure to permit a reasonable modification." *Id.*

Turn now to the risk of unfair prejudice. The evidence of K.J.'s stoma and the details of her bathroom needs created a straightforward risk: The jury would find for Plaintiffs not because Defendants violated the FHA but because someone

---

[4] Under *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S. Ct. 161 (1944), a policy statement, though non-authoritative, "is nonetheless 'entitled to respect' to the extent it has the 'power to persuade.'" *Bhogaita*, 765 F.3d at 1286 n.3 (quoting *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S. Ct. 1655, 1663 (2000)).

should compensate Plaintiffs for their suffering, regardless of whether that person is legally liable.

We cannot say the District Court committed a clear error of judgment in excluding the evidence on this basis. *Cf., e.g.*, Fed. R. Evid. 403 advisory committee's note to proposed rules (stating that Rule 403 guards against, among other things, "decision on an improper basis, commonly, though not necessarily, an emotional one"). Defendants conceded that K.J. had a disability. And the district judge permitted reference to K.J.'s "extraordinary gastrointestinal issues and frequent bathroom usage." The evidentiary value of *further* references to K.J.'s stoma and to the details of her bathroom needs is slight, and the danger of unfair prejudice is great.

## II.

Plaintiffs also argue that in light of an email they moved into evidence, evidence of K.J.'s stoma and the details of her bathroom needs should have been admitted under the rule of completeness. The email from Jennings to Plaintiffs states, in relevant part,

> I have read your emails addressed to my Leasing agent, Shelley
> Morris. She has reinforced several times to you what I am about to
> tell you as well. You both have read and signed a legally binding
> contract allowing you to reside in my property. We both signed an
> agreement of how we expect the property to be treated called "The
> Lease". The lease spells out CLEARLY what procedures you must
> take if you would like for me to consider alterations to the premises.
> Please do not use your daughter as a means of manipulating our legal

8

contract.  Just because she has special needs does not mean that you can violate the lease and tell me what you will do to my property.

All alteration to my property will be submitted to me in writing (mailed on paper) for consideration and working out the best solution for both of us.  If you believe that this is too much work for you or you are not willing to abide by our written agreement, I will gladly accept your written letter of Early Termination as stated in the lease.

I have submitted your emailed correspondence to my attorney to ensure I am within my rights and not violating any another's rights. He even made one more suggestion of putting a double key bolt lock on the door.

I will also be sending this in as a letter to both of you at your address stated on the lease and my property address, as due notice.

By permitting the jury to hear Jennings accuse Plaintiffs of "manipulation," the argument goes, the jury might have drawn an adverse inference against Johnson's credibility if it failed to appreciate just how dire Plaintiffs' circumstances actually were.

But *Plaintiffs* introduced the email.  And even assuming introduction of the email were somehow unavoidable to prove their case, *Plaintiffs* drew attention to the language by referencing it in their opening statement.  *See* Tr. of Jury Trial at 35, *Johnson v. Jennings*, No. 8:16-cv-01076-SDM-JSS (M.D. Fla. April 30, 2018), ECF No. 166 (MR. DIETZ: "Then, Kellie Jennings wrote Ms. Johnson and her mother that Ms. Johnson was using her daughter's special needs as an excuse to manipulate a legal contract to violate the lease and tell her what she could do with her property.").  And again during direct-examination of Johnson.  Tr. of Jury Trial

9

at 178, *Johnson v. Jennings*, No. 8:16-cv-01076-SDM-JSS (M.D. Fla. April 30, 2018), ECF No. 167.

We doubt that the language had the prejudicial effect Plaintiffs claim.  In any event, the rule of completeness is a tool for the *adversary* of the party that introduced the evidence sought to be made complete, not for the evidence's proponent.  1 *McCormick On Evidence* § 56 (Robert P. Mosteller, ed., 7th ed. 2014).

### III.

For these reasons, the judgment entered pursuant to the jury's verdict for Defendants is **AFFIMRED.**

**SO ORDERED.**